IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SK HYNIX INC.; SK HYNIX AMERICA INC., | ) | Civil Action No. 1:25-CV-1647 |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Network System Technologies, LLC ("NST" or "Plaintiff"), by and through its attorneys, demands a trial by jury on all issues so triable, and for its complaint against SK hynix Inc. and SK hynix America Inc. (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States, Title 35, United States Code, Section 271, *et seq.*, involving the following United States Patents (collectively, "Asserted Patents") and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283-285:

| |
|---|
| U.S. Patent No. 7,366,818 (Exhibit 1, "'818 patent") |
| U.S. Patent No. 7,373,449 (Exhibit 2, "'449 patent") |
| U.S. Patent No. 7,594,052 (Exhibit 3, "'052 patent") |
| U.S. Patent No. 7,613,849 (Exhibit 4, "'849 patent") |
| U.S. Patent No. 7,769,893 (Exhibit 5, "'9893 patent") |
| U.S. Patent No. 8,072,893 (Exhibit 6, "'2893 patent") |
| U.S. Patent No. 8,086,800 (Exhibit 7, "'800 patent") |

## THE PARTIES

2.      Plaintiff is a limited liability company formed under the laws of Delaware, with a principal place of business at 533 Congress Street, Portland, ME 04101. Plaintiff is the owner by assignment of the Asserted Patents.

3.      On information and belief, SK hynix Inc. is a corporation organized under the laws of the Republic of Korea ("Korea"), with a principal place of business at 2091, Gyeongchung-daero, Bubal-eub, Icheon-si, Gyeonggi-do, 17336, Korea.[1] On information and belief, SK hynix Inc. is the parent corporation of SK hynix America Inc. and is responsible, directly or indirectly, for SK hynix America Inc.'s infringing activities.

4.      On information and belief, SK hynix America Inc. is a corporation organized and existing under the laws of California, having a principal place of business at 3101 North 1st Street, San Jose, California 95134. On information and belief, SK hynix America Inc. is a wholly-owned or at least substantially-owned subsidiary of, and is controlled and directed by, SK hynix Inc. On information and belief, SK hynix America Inc. is a U.S. operating company for SK hynix Inc. and manages or supports technical operations and customer relationship operations, including orders, sales, and shipments to U.S. customers of products accused of infringement in this case.[2] On

---

[1] https://www.skhynix.com/company/UI-FR-CP06/#hqTitFirst (last visited October 7, 2025); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 2, 32 (W.D. Tex. Aug. 21, 2020).

[2] https://news.skhynix.com/sk-hynix-america-renovated-hq-reopens-to-advance-ai-memory-leadership/ (last visited October 7, 2025); https://www.linkedin.com/company/skhynix-america-inc/about/ (last visited October 7, 2025) ("SK hynix America Inc. operates as a subsidiary of SK Hynix Inc."); https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025) (identifying SK hynix [] America Inc. as an "R&D Subsidiary" in the United States); https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025) (identify SK hynix America Inc.'s offices as "Sales Offices"); https://www.linkedin.com/in/msrkarthikeyan/ (last visited October 7, 2025) (LinkedIn profile of a Senior Technical Account Manager for SK hynix America Inc. whose work includes "Advanced Technology Assessment, ... Technical Marketing, Product Management, Product Development, Customer Relationship building, ...

information and belief, SK hynix America Inc. has one or more business locations in this Judicial

District at 10801-1, 3rd FL, Suite 300 N. MoPac Expressway, Austin, Texas 78759 ("78759

address") and/or 4201 West Parmer Lane Bldg. B, Suite 245, Austin, Texas 78727 ("78727

address").[3] On information and belief, SK hynix America Inc. is registered to do business in

Texas.[4] On information and belief, SK hynix America Inc. may be served in Texas at least via its

registered agent, The Prentice-Hall Corporation System or CSC-Lawyers Incorporating Service

---

Sales Enablement" related to "SSD products"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 3, 5 (W.D. Tex. Aug. 21, 2020) (admitting that SK hynix America Inc. "provides commercial support for local customers including sales procurement and operations and high-level technical support to customers"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 26-2 (Declaration of Ki-Tae Kim in support of Defendants' Motion to Transfer Venue) at 2-4 (W.D. Tex. May 4, 2020) (admitting that "SK hynix America Inc. is the United States operating arm of SK hynix Inc., providing support for sales, technical sales support, and operations," and that SK hynix America Inc.'s "Austin facility provides commercial support for local customers including sales procurement and operations" and also "provides … technical support to customers, including providing sample products and coordinating with SK hynix Inc. employees in Korea").

[3] https://www.skhynix.com/company/UI-FR-CP06/#americaTitFirst (last visited October 7, 2025) (identifying an "Austin Office" of SK hynix America Inc. at this 78759 address in Austin, Texas); https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025) (same); https://www.linkedin.com/company/sk-hynix/about/ (last visited October 7, 2025) (identifying an "SK hynix America Austin Office" at this 78727 address in Austin, Texas); https://www.linkedin.com/company/skhynix-america-inc/about/ (last visited October 7, 2025) (same); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 3, 5, 7 (W.D. Tex. Aug. 21, 2020) (admitting that SK hynix America Inc. maintains an "offices," "facility," and "regular and established place of business" at this 78727 address in Austin, Texas); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 26-2 (Declaration of Ki-Tae Kim in support of Defendants' Motion to Transfer Venue) at 3-4 (W.D. Tex. May 4, 2020) (admitting that "SK hynix America Inc. operates a … facility in the Western District of Texas," located at this 78727 address in Austin, Texas); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 87 (Memorandum Opinion and Order) at 14 (W.D. Tex. Feb. 2, 2021) (recognizing that "Hynix maintains an office in Austin and provides support to one of its largest American customers in this District").

[4] *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 3 (W.D. Tex. Aug. 21, 2020) (admitting that "SK hynix America Inc. is registered to do business in Texas").

Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.[5]

5.     On information and belief, Defendants are joint tortfeasors with each other regarding the matters alleged herein. On information and belief, Defendants share management, ownership, institutional knowledge, advertising platforms, facilities, employees, distribution chains and platforms, and products lines accused of infringement in this case and operate as a unitary business venture, including based on corporate and/or contractual relationships. On information and belief, SK hynix Inc. subsidiaries, including at least SK hynix America Inc., had the same knowledge regarding the Asserted Patents as any corporate parent, including at least SK hynix Inc. and any other corporate parent in any SK hynix corporate parent-subsidiary relationship, and SK hynix Inc. had the same knowledge regarding the Asserted Patents as any corporate subsidiary, including at least SK hynix America Inc. The knowledge and actions of Defendants are imputed to each other, including at least because of corporate relatedness, direction and control, shared employees and leadership, joint enterprises and resources, and/or other means, systems, and practices of sharing knowledge and acting together.

6.     On information and belief, Defendants are engaged in making, using, offering for sale, selling, importing, or otherwise providing, within the United States and in particular the State of Texas and this Judicial District, directly or indirectly, system-on-a-chip products ("SoCs"), and/or related products and services, with features and functionalities that infringe the Asserted Patents.

---

[5] https://www.sos.state.tx.us/corp/sosda/index.shtml (last visited October 7, 2025) (identifying SK hynix America Inc.'s registered agent as "The Prentice-Hall Corporation System" located at 211 E. 7th Street, Suite 620, Austin, Texas 78701); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 3 (W.D. Tex. Aug. 21, 2020) (admitting that "SK hynix America Inc. maintains a registered agent for service of process within this district" and identifying the agent as "CSC-Lawyers Incorporating Service Company" located at that same address).

## JURISDICTION AND VENUE

7.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 6 above.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Jurisdiction and venue for this action are proper in this Judicial District.

10.     This Court has personal jurisdiction over Defendants at least because, through a respective Defendant's own acts and/or through the acts of the other Defendant acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; (v) have invoked the jurisdiction of this Judicial District for the assertion of patent-related claims in prior cases; (vi) waived personal jurisdiction objections in this Judicial District in prior patent-related cases; and/or (vii) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District. On information and belief, Defendants, directly and/or through intermediaries, have advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing products in the United States and in the State of

Texas, including in this Judicial District. On information and belief, Defendants, directly and/or through intermediaries, have conducted the activities described in paragraphs 131-232, within the United States and in the State of Texas, including in this Judicial District. On information and belief, Defendants, directly and/or through intermediaries, have directed the activities described in paragraphs 131-232 at customers and end users within the United States and in the State of Texas, including in this Judicial District.

11.     On information and belief, Defendants do one or more of the following with the Accused Products: (a) import such products into the United States for sale to customers and/or consumers, including customers and/or consumers in the State of Texas and in this Judicial District; (b) sell such products or offer them for sale in the United States, including to customers and/or consumers in the State of Texas and in this Judicial District; and/or (c) sell such products to customers who incorporate them into Accused Products that such customers import, sell, or offer for sale in the United States, including in the State of Texas and in this Judicial District. For example, on information and belief, Defendants have sales offices and/or authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Defendants have derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

12.     Defendants have established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas and this Judicial District without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas and this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and

belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas and this Judicial District.

13.    This Court has personal jurisdiction over Defendants at least because, on information and belief, they have committed, aided, abetted, contributed to and/or participated in the commission of acts of infringement giving rise to this action within the State of Texas, including in this District and elsewhere, by, *inter alia*, directly and/or indirectly making, using, selling, offering for sale, importing products and/or practicing methods that practice one or more claims of the Asserted Patents. Furthermore, on information and belief, Defendants transacted and conducted business in the State of Texas, including in this District and elsewhere, and with Texas residents with respect to the products and instrumentalities accused of infringing the Asserted Patents. Among other things, Defendants, on information and belief, directly and/or through subsidiaries, affiliates, and/or intermediaries (including distributors, retailers, and others), use, sell, ship, distribute, import into, offer for sale, and/or advertise or otherwise promote their products throughout the United States, including in the State of Texas and this District.[6] Moreover,

---

[6] *See, e.g.*, https://www.skhynix.com/company/UI-FR-CP06/#americaTitFirst (last visited October 7, 2025) (identifying an office in Austin, Texas); https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025) (identifying a "Sales Office[]" in Austin, Texas); https://www.linkedin.com/company/sk-hynix/about/ (last visited October 7, 2025) (identifying a location in Austin, Texas); https://www.linkedin.com/company/skhynix-america-inc/about/ (last visited October 7, 2025) (same); https://eng.sk.com/investments/info/texas (last visited October 7, 2025) ("SK U.S. Investment and Operations Map" for "Texas," identifying a location in Austin, Texas for SK hynix America); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 3-5, 7 (W.D. Tex. Aug. 21, 2020) (admitting that SK hynix America Inc. maintains a facility with employees in Austin, Texas and that it "transacted business within the State of Texas"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 26-2 (Declaration of Ki-Tae Kim in support of Defendants' Motion to Transfer Venue) at 2-4 (W.D. Tex. May 4, 2020) (admitting that "SK hynix America Inc. is the United States operating arm of SK hynix Inc." and that "SK hynix America Inc. operates a … facility in the Western District of Texas," located in Austin, Texas, with "employees in Austin … involved in sales of memory products,"

Defendants have purposefully and voluntarily placed, or contributed to the placing of, their infringing products into the stream of commerce with the expectation that those products will be purchased and used by customers and/or consumers in the State of Texas, including in this District. On information and belief, Defendants have also derived substantial revenues from infringing acts in this District, including from the sale and use of their infringing products. In addition, or in the alternative, this Court has personal jurisdiction over SK hynix Inc. under Federal Rule of Civil Procedure 4(k)(2). In addition, Defendants have not objected to personal jurisdiction by this Judicial District in at least one prior patent case, and Defendants asserted a patent-related counterclaim in that same case.[7] At least for those reasons, Defendants have the requisite minimum contacts within the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

14.     Venue is proper in this Judicial District as to Defendants under 28 U.S.C. §§ 1391(b) and 1400(b).

15.     Venue is proper as to SK hynix America Inc. because, on information and belief, it has committed acts of infringement and has a regular and established place of business in this Judicial District at one or more locations in Austin, Texas, as identified above in paragraphs 4 and

---

and that this "Austin facility provides commercial support for local customers including sales procurement and operations" and also "provides … technical support to customers, including providing sample products and coordinating with SK hynix Inc. employees in Korea"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 87 (Memorandum Opinion and Order) at 14 (W.D. Tex. Feb. 2, 2021) (recognizing that "Hynix maintains an office in Austin and provides support to one of its largest American customers in this District"); https://ssd.skhynix.com/ (last visited October 7, 2025) (SK hynix website with a "SHOP NOW" link directing customers to its Amazon.com storefront); https://www.amazon.com/stores/SKhynix/SKhynix/page/89A252A8-9089-4EAA-AD85-26420480A630?ref_=cm_sw_r_ud_ast_store_PWJZSW7REQ05C3W4M97A (last visited October 7, 2025) (Amazon.com storefront for SK hynix).
[7] *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer and Counterclaim) at 1, 4, 6, 31, 49-52 (W.D. Tex. Aug. 21, 2020).

13. 28 U.S.C. § 1400(b). Defendants have admitted that SK hynix America Inc. has a regular and established place of business in this Judicial District.[8] Further, on information and belief, SK hynix America Inc.'s business at these one or more locations in Austin, Texas, including the activities of personnel working at these locations, relates to SoCs and solid state drives (SSDs), including the infringing products at issue in this case.[9] For example, on information and belief, personnel employed by SK hynix America Inc. working at these one or more locations in Austin, Texas are semiconductor professionals with expertise in semiconductors and related memory products,

---

[8] *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 7 (W.D. Tex. Aug. 21, 2020) (admitting "that SK hynix America Inc. maintains a regular and established place of business at 4201 West Parmer Lane Bldg. B, Suite 245, Austin, TX 78727"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 26-2 (Declaration of Ki-Tae Kim in support of Defendants' Motion to Transfer Venue) at 3-4 (W.D. Tex. May 4, 2020) (admitting that "SK hynix America Inc. operates a … facility in the Western District of Texas, located at 4201 West Parmer Lane Bldg. B, Suite 245/250, Austin, TX 78727," with multiple employees at this Austin facility); *see also Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 87 (Memorandum Opinion and Order) at 14 (W.D. Tex. Feb. 2, 2021) (recognizing that "Hynix maintains an office in Austin and provides support to one of its largest American customers in this District").

[9] *See, e.g.*, https://www.linkedin.com/company/skhynix-america-inc/about/ (last visited October 7, 2025) (describing SK hynix America Inc. as a "Semiconductor Manufacturing" company with specialties in "[s]emiconductors[]" and "[m]emory," and identifying an office in Austin, Texas); https://eng.sk.com/investments/info/texas (last visited October 7, 2025) ("SK U.S. Investment and Operations Map" for "Texas," describing SK hynix America as a "semiconductor compan[y] and memory chipmaker[]" and identifying a location in Austin, Texas); https://eng.sk.com/investments/ (last visited October 7, 2025) (same); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 26-2 (Declaration of Ki-Tae Kim in support of Defendants' Motion to Transfer Venue) at 3-4 (W.D. Tex. May 4, 2020) (admitting that SK hynix America Inc. has "employees in Austin … involved in sales of memory products"); https://www.linkedin.com/in/msrkarthikeyan/ (last visited October 7, 2025) (LinkedIn profile of a Senior Technical Account Manager for SK hynix America Inc. in Austin, Texas, whose work relates to "SSD products"); https://www.linkedin.com/in/dk-park-149509103/ (last visited October 7, 2025) (LinkedIn profile of a Principal Engineer, Field Applications, Technical Marketing & Enablement employee for SK hynix America in Austin, Texas, whose work relates to "memory semiconductor products" and "Memory enablement for SoC, Servers, WS, Clients").

including field application engineers and senior technical account managers.[10] On information and belief, one of Defendants' largest customers within the United States, Dell Technologies, is based in or around Austin, Texas, and personnel working at the SK hynix America Inc. location(s) in Austin, Texas direct their efforts to providing Dell with the infringing products, including testing, certification, qualification, and integration of the infringing products specifically for use by Dell Technologies.[11]

16.    SK hynix Inc. is a foreign corporation that has committed acts of infringement in this District, and venue is proper in any district in which SK hynix Inc. is subject to personal jurisdiction. Venue is proper as to SK hynix Inc. because it is a foreign entity. 28 U.S.C. § 1391(c).

17.    Venue is further proper based on the facts alleged in the preceding paragraphs, which are incorporated by reference as if fully set forth herein.

## JOINDER AND RELATIONSHIP AMONG DEFENDANTS

18.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 17 above.

---

[10] *See, e.g.*, https://www.linkedin.com/in/msrkarthikeyan/ (last visited October 7, 2025); https://www.linkedin.com/in/dk-park-149509103/ (last visited October 7, 2025).
[11] *See* https://www.dell.com/en-us/dt/office-locations.htm (last visited October 7, 2025) (listing Dell Technologies office locations in Austin, Texas and Round Rock, Texas); https://www.dell.com/support/kbdoc/en-vc/000217333/finding-hynix-drive-in-windows-server-catalog (last visited October 7, 2025) (Dell Technologies support article regarding SK hynix drives); https://www.linkedin.com/in/msrkarthikeyan/ (last visited October 7, 2025) (LinkedIn profile of SK hynix America Inc. employee in Austin, Texas, whose work includes "aligning [SK hynix] products to Dell Technologies' needs technically and strategically," "qualification and integration of SSD products into various Dell business units," and "establish[ing] SK hynix as a trusted and reliable SSD supplier for Dell"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00525-ADA, Dkt. 17 (SK hynix Inc. and SK hynix America Inc.'s Answer) at 5 (W.D. Tex. Aug. 21, 2020) (admitting "that SK hynix America Inc. provides commercial support for local customers including sales procurement and operations and … technical support to customers, including Dell"); *Netlist, Inc. v. SK hynix Inc. and SK hynix America Inc.*, case No. 6:20-cv-00194-ADA, Dkt. 87 (Memorandum Opinion and Order) at 14 (W.D. Tex. Feb. 2, 2021) (recognizing that "Hynix maintains an office in Austin and provides support to one of its largest American customers in this District").

19.    Joinder is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299 at least because Defendants' infringing conduct alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, or portions thereof, and questions of fact common to all Defendants will arise in this action.

20.    On information and belief, the accused products are common to all Defendants' infringement of the Asserted Patents. Stated differently, on information and belief, all Defendants infringe the Asserted Patents by, for example, making, using, importing, offering for sale, and selling SK hynix products. Thus, on information and belief, each Defendant's infringement is based on common products, and the factual question of infringement will substantially overlap for all Defendants.

## THE ASSERTED PATENTS

21.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 20 above.

22.    The Asserted Patents result from extensive research and development by Philips Semiconductors, a subsidiary of Koninklijke Philips N.V. ("Philips") that included VLSI Technology, Inc., which Philips acquired in 1999. Prior to being spun off in 2006 as NXP Semiconductors N.V. ("NXP"), Philips Semiconductors was one of the largest semiconductor companies in the world. Each of the Asserted Patents predate the NXP spin-off and were retained by Philips until all right, title, and interest in the Asserted Patents were transferred to Plaintiff.

23.    The inventions disclosed in the Asserted Patents relate to Philips's development of Network on Chip ("NoC") technology.

24.    On information and belief, Defendants had actual knowledge of the '818 patent, '449 patent, '052 patent, '9893 patent, '2893 patent, and '800 patent (collectively, "the Enforced Patents") and infringement of the Enforced Patents by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as early as December 19, 2022, based on Plaintiff's lawsuits against semiconductor industry leaders including (i) Qualcomm entities and Arteris, Inc. ("Arteris") (W.D. Tex., Case No. 1:22-cv-1331, filed December 19, 2022), (ii) Texas Instruments Inc. ("Texas Instruments") et al. (E.D. Tex., Case No. 2:22-cv-482, filed December 19, 2022), and (iii) Samsung entities et al. (E.D. Tex., Case No. 2:22-cv-481, filed December 19, 2022) (collectively, "Plaintiff's December 2022 litigation"). Plaintiff's December 2022 litigation involved the Enforced Patents and claimed infringement by and/or based on Arteris's interconnect technology for SoCs, including Arteris's (1) interconnect semiconductor intellectual property (IP) and (2) IP deployment technology (collectively, "Arteris interconnect technology").[12] On information and belief, Defendants license (or at least previously licensed) the Arteris interconnect technology that is accused in and forms the basis of Plaintiff's December 2022 litigation, and Defendants' Accused Products include that licensed Arteris interconnect technology and/or a derivative thereof.[13] On information and belief, Arteris notified customers and licensees, including Defendants, of Plaintiff's December 2022 litigation against Arteris and Arteris's customers for

---

[12] https://www.arteris.com/about-arteris (last visited October 7, 2025); https://www.arteris.com/products (last visited October 7, 2025); *see Network System Technologies, LLC v. Qualcomm Inc. et al.*, No. 1:22-cv-1331, Dkt. 1 (Complaint) (W.D. Tex. Dec. 19, 2022); *Network System Technologies, LLC v. Texas Instruments Inc. et al.*, No. 2:22-cv-482, Dkt. 1 (Complaint) (E.D. Tex. Dec. 19, 2022); *Network System Technologies, LLC v. Samsung Electronics Co., Ltd. et al.*, No. 2:22-cv-481, Dkt. 1 (Complaint) (E.D. Tex. Dec. 19, 2022).

[13] *See id.*; https://www.arteris.com/press-releases/sk-hynix-solid-state-storage-device-ssd-controllers-arteris-flexnoc/ (last visited October 7, 2025); https://www.arteris.com/press-releases/arteris-announces-9-new-ip-licensees-in-2015/ (last visited October 7, 2025); https://semiengineering.com/the-week-in-review-designiot-48/ (last visited October 7, 2025).

infringement based on Arteris interconnect technology that is included in Defendants' Accused Products. Also, on information and belief, Defendants track or monitor litigation in the tight-knit semiconductor industry and against semiconductor companies and semiconductor-related companies, including Defendants' buyers, sellers, competitors, licensors, and peers, such as Qualcomm, Arteris, Texas Instruments, and Samsung. On information and belief, Defendants had knowledge of, and evaluated, the Enforced Patents and infringement of the Enforced Patents by Defendants and/or their customers or end users based on knowledge of Plaintiff's December 2022 litigation as of December 19, 2022, including the Enforced Patents involved therein and the infringement claims therein against Arteris interconnect technology that Defendants license (or at least previously licensed) and incorporate into Defendants' Accused Products.

25.    On information and belief, Defendants had actual knowledge of the Enforced Patents and infringement of the Enforced Patents by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as early as December 19, 2022, based on Plaintiff's December 2022 litigation and Defendants' membership with RPX Corporation ("RPX"). On information and belief, at least one of Defendants is a member of RPX, maintains a close relationship with RPX, including with respect to protection from and defense against patent infringement claims and litigation, and has been a member and had a relationship with RPX since before Plaintiff's December 2022 litigation, and as described above in paragraphs 3-5, the knowledge and actions of Defendants are imputed to each other based on their relationship.[14]

---

[14] *See Cascades Computer Innovation LLC v. RPX Corp. et al.*, No. 12-CV-1143-YGR, Dkt. 119 (Order Denying Motions to Dismiss First Amended Complaint) at 5 (N.D. Cal. Dec. 3, 2013) (referring to "RPX member, Hynix"); *Cascades Computer Innovation LLC v. RPX Corp. et al.*, No. 12-CV-1143-YGR, Dkt. 124 (RPX's Answer) at 5, 11 (N.D. Cal. Jan. 14, 2014) (admitting that "Hynix [Semiconductor, Inc.]" is an "RPX member[]"); *Juniper Networks Inc. v. Parity Networks LLC*, IPR2018-01642, Exhibit 2002 (PTAB Jan. 11, 2019) ("Semiconductor Leaders Push RPX Network to 65 Clients," Business Wire (Oct. 4, 2010)) (identifying Hynix

Further, on information and belief, RPX provides its members, including Defendants, with alerts, notifications, and other updates and information regarding litigation, potential threats of litigation and patent infringement, and patents of concern, including regarding litigation by non-practicing entities such as Plaintiff and including particularly Plaintiff's December 2022 litigation and concerns related thereto. For example, RPX published a news article on December 30, 2022 about Plaintiff's December 2022 litigation that identifies the defendants in those cases (including Defendants' licensor, Arteris), the accused technology field (SoCs), and the case numbers.[15] This article, on information and belief, contains hyperlinks that lead to RPX webpages for each of the three cases in Plaintiff's December 2022 litigation, and those RPX webpages provide copies of the complaints for those cases, which identify the Enforced Patents and claim infringement by and/or based on Arteris interconnect technology that, on information and belief, is licensed by Defendants and included in Defendants' Accused Products.[16] Also, for example, RPX published another news article on April 18, 2023 about Plaintiff's December 2022 litigation that identifies the defendants and, on information and belief, includes a hyperlink that leads to an RPX webpage about Plaintiff's

---

Semiconductor, Inc. as a client of RPX Corp.); https://www.rpxcorp.com/news_release/9205/ (last visited October 7, 2025) (identifying Hynix Semiconductor Inc. as an "RPX client[]" and referencing an "RPX-structured transaction to resolve patent infringement lawsuits brought … against RPX client[] … Hynix Semiconductor Inc."); https://www.eetimes.com/as-patent-suits-rise-rpx-claims-wins/ (last visited October 7, 2025) (referring to "RXP client[] Hynix"); *Cirrus Logic, Inc. et al. v. Greenthread, LLC*, IPR2024-00017, Paper 47 at 23 (PTAB Aug. 22, 2024) (stating that "SK Hynix" "approached Greenthread through RPX" regarding a license).

[15] https://insight.rpxcorp.com/news/73251-apparent-funding-in-hand-network-system-technologies-begins-litigating (last visited October 7, 2025).

[16] *Id.*; https://insight.rpxcorp.com/litigation/txwdce-1200274-network-system-technologies-v-qualcomm#overview (last visited October 7, 2025) (including a link to the complaint); https://insight.rpxcorp.com/litigation/txedce-219205-network-system-technologies-v-texas-instruments#overview (last visited October 7, 2025) (same); https://insight.rpxcorp.com/litigation/txedce-219202-network-system-technologies-v-samsung-electronics#overview (last visited October 7, 2025) (same).

litigations and asserted patents, including the Enforced Patents.[17] Moreover, RPX maintains this

webpage about Plaintiff's litigations and asserted patents, and this RPX webpage includes links to

the news articles mentioned above as well as links to the dockets of the three cases in Plaintiff's

December 2022 litigation, which include copies of the complaints for those cases that identify the

Enforced Patents and claim infringement by and/or based on Arteris interconnect technology that,

on information and belief, is licensed by Defendants and included in Defendants' Accused

Products.[18] Also, this RPX webpage about Plaintiff's litigations and asserted patents indicates

cases by "Market Sector" and shows that Plaintiff's past cases, including Plaintiff's December

2022 litigation, relate to the tight-knit industry of "Semiconductors," which is the market sector of

Defendants and their Accused Products.[19] On information and belief, RPX provides its members,

including Defendants, with alerts, notifications, and other updates and information regarding

litigation, potential threats of litigation and patent infringement, and patents of concern based on

---

[17] https://insight.rpxcorp.com/news/74888-foreign-service-issues-prompt-campaign-reshuffle
(last visited October 7, 2025); https://insight.rpxcorp.com/entity/12724833-network-system-
technologies-llc (last visited October 7, 2025) (RPX webpage for NST);
https://web.archive.org/web/20250513160720/https://insight.rpxcorp.com/entity/12724833-
network-system-technologies-llc (last visited October 7, 2025) (showing the content on this RPX
webpage for NST).

[18] https://insight.rpxcorp.com/entity/12724833-network-system-technologies-llc (last visited
October 7, 2025) (RPX webpage for NST);
https://web.archive.org/web/20250513160720/https://insight.rpxcorp.com/entity/12724833-
network-system-technologies-llc (last visited October 7, 2025) (showing the content on this RPX
webpage for NST); https://insight.rpxcorp.com/litigation/txwdce-1200274-network-system-
technologies-v-qualcomm#overview (last visited October 7, 2025) (including a link to the
complaint); https://insight.rpxcorp.com/litigation/txedce-219205-network-system-technologies-
v-texas-instruments#overview (last visited October 7, 2025) (same);
https://insight.rpxcorp.com/litigation/txedce-219202-network-system-technologies-v-samsung-
electronics#overview (last visited October 7, 2025) (same).

[19] https://insight.rpxcorp.com/entity/12724833-network-system-technologies-llc (last visited
October 7, 2025) (RPX webpage for NST);
https://web.archive.org/web/20250513160720/https://insight.rpxcorp.com/entity/12724833-
network-system-technologies-llc (last visited October 7, 2025) (showing the content on this RPX
webpage for NST).

market sector. On information and belief, based on Defendants' membership and relationship with RPX, Defendants receive from, and review and evaluate the applicability of, RPX alerts, notifications, and other updates and information regarding litigation in the "Semiconductors" market sector, litigation by non-practicing entities such as Plaintiff, and/or litigation involving Defendants' buyers, sellers, competitors, licensors, and peers, such as Qualcomm, Arteris, Texas Instruments, and Samsung. On information and belief, based on Defendants' membership and relationship with RPX, Defendants received from, and reviewed and evaluated the applicability of, RPX alerts, notifications, and other updates and information regarding Plaintiff's December 2022 litigation, and the details thereof, including the Enforced Patents and infringement claims, as early as December 19, 2022. On information and belief, based on Defendants' membership and relationship with RPX and RPX's provision of information about Plaintiff's December 2022 litigation, which involved the Enforced Patents and claims of infringement by and/or based on Arteris interconnect technology that Defendants license and include in Defendants' Accused Products, Defendants had knowledge of, and evaluated, the Enforced Patents and Defendants' infringement of the Enforced Patents as early as December 19, 2022.

**U.S. Patent No. 7,366,818**

26.     Plaintiff is the lawful owner of all right, title, and interest in the '818 patent, entitled "INTEGRATED CIRCUIT COMPRISING A PLURALITY OF PROCESSING MODULES AND A NETWORK AND METHOD FOR EXCHANGING DATA USING SAME," including the right to sue and to recover for infringement thereof. The '818 patent was duly and legally issued on April 29, 2008, naming Andrei Radulescu and Kees Gerard Willem Goossens as inventors. A copy of the '818 patent is attached hereto as Exhibit 1.

27.     The '818 patent has 7 claims: 1 independent claim and 6 dependent claims.

28.    The '818 patent covers SoCs that have an interface that comprises a dropping means for dropping data exchanged by two modules and where the interface can control the dropping of data and therefore completion of transactions.

29.    The claims of the '818 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '818 patent.

> 1. Integrated circuit comprising a plurality of processing modules (M, S) said modules being disposed on the same chip, and a network (N; RN) arranged for providing at least one connection between a first and at least one second module (M, S),
>
> wherein said modules communicate via a network on chip, and
>
> wherein said connection supports transactions comprising outgoing messages from the first module to the second modules and return messages from the second modules to the first module, the integrated circuit comprising at least one dropping means (DM) for dropping data exchanged by said first and second module (M, S), and
>
> at least one interface means (ANIP, PNIP) for managing the interface between a module (M, S) and the network (N, RN),
>
> wherein said interface means (ANIP, PNIP) comprises a first dropping means (DM) for dropping data, and
>
> wherein the dropping of data and therefore the transaction completion can be controlled by the interface means.

(Exhibit 1, '818 patent at claim 1.)

30.    The asserted claim(s) of the '818 patent comprise at least the following physical components: an integrated circuit, a plurality of processing modules being disposed on the same chip, a network arranged for providing at least one connection between a first and at least one second module, at least one interface means for managing the interface between a module and the network, and a dropping means comprised in said interface means for dropping data (e.g., claim 1). Certain dependent claims further recite the network comprises a plurality of network routers

(e.g., claim 2). Thus, the asserted claim(s) of the '818 patent are directed to a physical system and are not directed to an abstract idea.

31.    The inventions of the asserted claim(s) of the '818 patent provide an integrated circuit having a plurality of processing modules, a network, and at least one interface means disposed on the same chip, wherein the interface means comprises a dropping means that provides the capability of dropping data exchanged between the plurality of modules over a network and the capability for the interface means to control transaction completion. The dependent claims further recite details of the network configuration (e.g., the network comprises a plurality of network routers for forwarding data without dropping data), and creating, sending, and storing error messages when data is dropped. These elements provide for a unique and unconventional physical structure and operation for dropping data and implementing quality-of-service (QoS) on an integrated circuit.

32.    Thus, the asserted claim(s) of the '818 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '818 patent.

33.    The subject matter described and claimed by the '818 patent, including the integrated circuit of claim 1, was an improvement in the functionality, performance, and efficiency of integrated circuits, the connections therein and communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '818 patent.

34.    The '818 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in

the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '818 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '818 patent, and such Philips's U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

35.    The '818 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 85 patent applications assigned to industry leaders such as Intel Corporation, Arm Limited, NEC Corporation, IBM Corporation, and others.[20]

36.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

37.    On information and belief, Defendants and their predecessors were aware of and considered the '818 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

38.    On information and belief, Defendants have expertise in the subject matter of the '818 patent and possess sufficient technical competence to understand the scope of such patent.

39.    On information and belief, by virtue of Philips's and the '818 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '818 patent,

---

[20] https://patents.google.com/patent/US7366818B2/ (last visited October 7, 2025).

Defendants' technical competence to understand the scope of the '818 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '818 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '818 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation.

40.     As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '818 patent and infringement of the '818 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and the expiration date of the '818 patent.

## U.S. Patent No. 7,373,449

41.     Plaintiff is the lawful owner of all right, title, and interest in the '449 patent, entitled "APPARATUS AND METHOD FOR COMMUNICATING IN AN INTEGRATED CIRCUIT," including the right to sue and to recover for infringement thereof. The '449 patent was duly and legally issued on May 13, 2008, naming Andrei Radulescu and Kees Gerard Willem Goossens as inventors. A copy of the '449 patent is attached hereto as Exhibit 2.

42.     The '449 patent has 14 claims: 2 independent claims (i.e., claims 2 and 10) and 12 dependent claims.[21]

43.     The '449 patent covers SoCs that have a resource manager that manages network

---

[21] Plaintiff has statutorily disclaimed claims 1 and 3-5.

resources by determining whether the resources (i.e., connection properties) are available.

44.     The claims of the '449 patent, including claim 10 (reproduced below), recite at least these inventive concepts of the '449 patent.

> 10. Method for exchanging messages in an integrated circuit comprising a plurality of modules, the messages between the modules being exchanged over connections via a network, wherein said connections comprises a set of communication channels each having a set of connection properties, any communication channel being independently configurable, wherein said connection through the network supports transactions comprising at least one of outgoing messages from the first module to the second module and return messages from the second module to the first module and further comprising the steps of:
>
> the first module issuing a request for a connection with the second module to a communication manager, wherein the request comprises desired connection properties associated with the sets of communication channels;
>
> the communication manager forwarding the request to a resource manager;
>
> the resource manager determining whether a target connection with the desired connection properties is available;
>
> the resource manager responding with the availability of the target connection to the communication manager; and
>
> the target connection between the first and second module being established based on the available properties of said communication channels of said connection.

(Exhibit 2, '449 patent at claim 10.)

45.     The asserted claim(s) of the '449 patent are directed to methods performed within a system that comprises at least the following physical components: an integrated circuit comprising a plurality of modules, messages between the modules exchanged over connections via a network, the connection comprising a set of communication channels, a first module that issues a request for a connection with the second module to a communication manager, and a resource manager that determines the availability of the target connection and responds with the

availability of the target connection to the communication manager (e.g., claim 10). The dependent claims further recite the network manages traffic utilizing at least one of a switch and a router (e.g., claim 11) and that the modules and the network are disposed on a chip (e.g., claim 12). Thus, the asserted claim(s) of the '449 patent are directed to methods performed within an integrated circuit and are not directed to an abstract idea.

46.    The inventions of the asserted claim(s) of the '449 patent provide the capability of exchanging messages in a specific integrated circuit, the messages being exchanged between modules over connections via a network, wherein said connections comprise a set of communication channels each having independently configurable connection properties, as well as ensuring that the network has sufficient resources to implement the target connection through use of the communication manager and resource manager. The dependent claims further recite particular connection properties that could be implemented on the connections over the network and a specific structure of the resource manager. These elements provide for the unique and unconventional application of network-on-chip technology to provide better efficiency and resource utilization when exchanging messages between a plurality of modules disposed on the chip.

47.    Thus, the asserted claim(s) of the '449 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '449 patent.

48.    The subject matter described and claimed by the '449 patent, including the method for exchanging messages in an integrated circuit of claim 10, was an improvement in the

functionality, performance, and efficiency of integrated circuits, the connections therein and communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '449 patent.

49.     The '449 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '449 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '449 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

50.     The '449 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 85 patent applications assigned to industry leaders such as Intel Corporation, Arm Limited, NEC Corporation, IBM Corporation, and others.[22]

51.     On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

52.     On information and belief, Defendants and their predecessors were aware of and considered the '449 patent, and its actual or potential applicability to their own current products

---

[22] https://patents.google.com/patent/US7373449B2/ (last visited October 7, 2025).

and product roadmaps, including the products described herein.

53.    On information and belief, Defendants have expertise in the subject matter of the '449 patent and possess sufficient technical competence to understand the scope of such patent.

54.    On information and belief, by virtue of Philips's and the '449 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '449 patent, Defendants' technical competence to understand the scope of the '449 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '449 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '449 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation.

55.    As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '449 patent and infringement of the '449 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and the expiration date of the '449 patent.

**U.S. Patent No. 7,594,052**

56.    Plaintiff is the lawful owner of all right, title, and interest in the '052 patent, entitled "INTEGRATED CIRCUIT AND METHOD OF COMMUNICATION SERVICE MAPPING," including the right to sue and to recover for infringement thereof. The '052 patent was duly and legally issued on September 22, 2009, naming Andrei Radulescu and Kees Gerard Willem

Goossens as inventors. A copy of the '052 patent is attached hereto as Exhibit 3.

57.    The '052 patent has 7 claims: 3 independent claims and 4 dependent claims.

58.    The '052 patent covers SoCs that offer differentiated intermodular communication services via connections with corresponding properties. The covered SoCs map a requested communication service based on specific communication properties to a connection based on connection properties according to a communication service identification.

59.    The claims of the '052 patent, including claim 6 (reproduced below), recite at least these inventive concepts of the '052 patent.

> 6. Method of communication service mapping in an integrated circuit, having a plurality of processing modules (M, S), wherein at least one first of said processing modules (M) requests at least one communication service to at least one second processing module (S) based on specific communication properties and at least one communication service identification, wherein said at least one communication service identification comprises at least one communication thread or at least one address range, said address range for identifying one or more second processing modules (S) or a memory region within said one or more second processing modules (S), comprising the steps of:
>
> coupling said plurality of processing modules (M, S) by an interconnect means (N) and
>
> enabling a connection based communication having a set of connection properties,
>
> controlling the communication between said at least one first of said plurality of processing modules (M) and said interconnect means (N) by at least one network interface (NI) associated to said at least one first of said processing modules,
>
> mapping the requested at least one communication service based on said specific communication properties to a connection based on a set of connection properties according to said at least one communication service identification.

(Exhibit 3, '052 patent at claim 6.)

60.    The asserted claim(s) of the '052 patent are directed to a method performed within a system that comprises at least the following physical components: an integrated circuit, a

plurality of processing modules, an address range associated to at least one second of the plurality of processing modules, an interconnect means for coupling the plurality of processing modules, a connection based communication having a set of connection properties, and at least one network interface associated to said at least one first of said processing modules for controlling the communication between said at least one first of said plurality of processing modules and said interconnect means (e.g., claim 6). Thus, the asserted claim(s) of the '052 patent are directed to a method performed within an integrated circuit and are not directed to an abstract idea.

61.     The inventions of the asserted claim(s) of the '052 patent provide the capability of mapping communication services requested from a first processing module to a second processing module via a connection over an on-chip network. The inventions of the claim(s) of the '052 patent also allow for processing modules that do not communicate in the protocol of the network to exchange messages over a network by mapping the requested communication service based on specific communication properties to a connection based on a set of connection properties according to at least one communication service identification. These elements provide for a unique and unconventional application of network-on-chip technology and allow for processing modules of varying type to exchange messages on connections over the on-chip network, the connections having specific and desired connection properties.

62.     Thus, the asserted claim(s) of the '052 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '052 patent.

63.     The subject matter described and claimed by the '052 patent, including the method

of communication service mapping in an integrated circuit of claim 6, was an improvement in the functionality, performance, and efficiency of integrated circuits, the connections therein and communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '052 patent.

64.    The '052 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '052 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '052 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

65.    The '052 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 31 patent applications assigned to industry leaders such as Samsung Electronics Co., Texas Instruments Incorporated, and others.[23]

66.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

67.    On information and belief, Defendants and their predecessors were aware of and

---

[23] https://patents.google.com/patent/US7594052B2/ (last visited October 7, 2025).

considered the '052 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

68.     On information and belief, Defendants have expertise in the subject matter of the '052 patent and possess sufficient technical competence to understand the scope of such patent.

69.     On information and belief, by virtue of Philips's and the '052 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '052 patent, Defendants' technical competence to understand the scope of the '052 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '052 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '052 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation, and in no event later than the date of this Complaint.

70.     As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '052 patent and infringement of the '052 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and no later than the date of this Complaint.

**U.S. Patent No. 7,613,849**

71.     Plaintiff is the lawful owner of all right, title, and interest in the '849 patent, entitled "INTEGRATED CIRCUIT AND METHOD FOR TRANSACTION ABORTION," including the right to sue and to recover for infringement thereof. The '849 patent was duly and legally issued

on November 3, 2009, naming Andrei Radulescu and Kees Gerard Willem Goossens as inventors. A copy of the '849 patent is attached hereto as Exhibit 4.

72.    The '849 patent has 8 claims: 7 independent claims and 1 dependent claim.

73.    The '849 patent covers SoCs that include an interconnect device for coupling processing modules and enabling a device-level communication based on transactions between the processing modules and further include a transaction abortion unit for aborting the transaction issued from a first module by receiving an abort request issued by the first module, initiating a discard of the transaction to be aborted, and issuing a response indicating the success/failure of the requested transaction abortion.

74.    The claims of the '849 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '849 patent.

1. An integrated circuit comprising:

a plurality of processing modules including a first module and a second module;

an interconnect device for coupling said plurality of processing modules and for enabling a device-level communication based on transactions between said plurality of processing modules, wherein the first processing module issues at least one transaction for reception by the second processing module through the interconnect device;

at least one transaction abortion unit connected at least one of between the first module and the interconnect device and between the second module and the interconnect device for aborting at least one transaction issued from said first module in response to receiving an abort request issued by said first module, by initiating a discard of said at least one transaction to be aborted, and by issuing a response indicating a success/failure of the abort request; and

at least one network interface associated to one of said plurality of processing modules for controlling the communication between said one of said plurality of processing modules and said interconnect,

wherein said at least one transaction abortion unit is arranged in one of said network interfaces;

29

wherein said at least one network interface further comprise a request buffer for buffering received data; and

wherein said transaction abortion unit is adapted to issue a discard for said at least one transaction to be aborted as stored in said request buffer.

(Exhibit 4, '849 patent at claim 1.)

75.    The asserted claim(s) of the '849 patent comprise at least the following physical components: an integrated circuit, a plurality of processing modules including first and second processing modules, an interconnect device coupling the plurality of processing modules, at least one transaction abortion unit (TAU) connected at least one of between the first module and the interconnect device and between the second module and the interconnect device, at least one network interface associated to one of the plurality of processing modules, with the at least one TAU arranged in one of the network interfaces, and a request buffer (e.g., claim 1). The dependent claim further recites the TAU is adapted to perform the transaction abortion atomically or partially (claim 2). Thus, the asserted claim(s) of the '849 patent are directed to a physical system and are not directed to an abstract idea.

76.    The inventions of the asserted claim(s) of the '849 patent provide an integrated circuit having a plurality of processing modules, an interconnect device coupling the plurality of processing modules and enabling a device-level communication based on transactions between the plurality of processing modules, at least one network interface associated to one of the plurality of processing modules and comprising a request buffer, and at least one TAU connected at least one of between the first module and the interconnect device and between the second module and the interconnect device for aborting at least one transaction issued from the first module in response to receiving an abort request issued by the first module by initiating a discard of the at least one transaction and issuing a response indicating a success/failure of the abort request, with the TAU

arranged in one of the network interfaces and adapted to issue a discard for a transaction to be aborted as stored in the request buffer. The dependent claim further recites that the at least one TAU is adapted to perform the at least one transaction abortion atomically or partially. These elements provide for a unique and unconventional physical structure and operation for transaction abortion in an integrated circuit.

77.    Thus, the asserted claim(s) of the '849 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '849 patent.

78.    The subject matter described and claimed by the '849 patent, including the integrated circuit of claim 1, was an improvement in the functionality, performance, and efficiency of integrated circuits, and the communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '849 patent.

79.    The '849 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '849 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '849 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and

product roadmaps, including the products described herein.

80.    The '849 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 13 patent applications assigned to industry leaders such as Intel Corporation, IBM Corporation, and others.[24]

81.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

82.    On information and belief, Defendants and their predecessors were aware of and considered the '849 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

83.    On information and belief, Defendants have expertise in the subject matter of the '849 patent and possess sufficient technical competence to understand the scope of such patent.

84.    On information and belief, by virtue of Philips's and the '849 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '849 patent, Defendants' technical competence to understand the scope of the '849 patent, Defendants had actual knowledge of the '849 patent around the time it issued or its U.S. application published and in no event later than the date of this Complaint.

85.    As explained above, Defendants had actual knowledge of the '849 patent and infringement of the '849 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and no later than the date of this Complaint.

**U.S. Patent No. 7,769,893**

---

[24] https://patents.google.com/patent/US7613849B2/ (last visited October 7, 2025).

86.    Plaintiff is the lawful owner of all right, title, and interest in the '9893 patent, entitled "INTEGRATED CIRCUIT AND METHOD FOR ESTABLISHING TRANSACTIONS," including the right to sue and to recover for infringement thereof. The '9893 patent was duly and legally issued on August 3, 2010, naming Kees Gerard Willem Goossens as inventor. A copy of the '9893 patent is attached hereto as Exhibit 5.

87.    The '9893 patent has 11 claims: 2 independent claims and 9 dependent claims.

88.    The '9893 patent covers SoCs that use an address translation unit, which is part of a network interface, for address mapping, where the address translation unit determines both the message receiving module and a location within the message receiving module.

89.    The claims of the '9893 patent, including claim 4 (reproduced below), recite at least these inventive concepts of the '9893 patent.

4. A method for exchanging messages in an integrated circuit comprising a plurality of modules, the messages between the plurality of modules being exchanged via a network wherein a message issued by an addressing module M comprises:

first information indicative of a location of an addressed message receiving module S within the network and is comprised of (1) a connection identifier identifying two or more message receiving modules S and (2) an identifier of a passive network interface means associated with the addressed message receiving module S, and second information indicative of a particular location within the addressed message receiving module S, such as a memory, or a register address, the method including the steps of:

(a) issuing from said addressing module M a message request including said first information, said second information, and data and/or connection properties to an address translation unit included as part of an active network interface module associated with said addressing module M,

(b) arranging, at said address translation unit, the first and the second information comprising said issued message as a single address,

(c) determining, at said address translation unit, which message receiving module S is being addressed in said message request issued from said addressing module M based on said single address, and

(d) further determining, at said address translation unit, the particular location within the addressed message receiving module S based on said single address.

(Exhibit 5, '9893 patent at claim 4.)

90.    The asserted claim(s) of the '9893 patent are directed to methods performed within a system that comprises at least the following physical components: an integrated circuit, a plurality of modules, a network, a passive network interface means associated with the addressed message receiving modules, a particular location within the addressed message receiving module such as a memory or a register, an address translation unit, and an active network interface module associated with the addressing module (e.g., claim 4). The dependent claims further recite that the communication between the plurality of modules is performed over connections and that a connection is a set of communication channels (e.g., claim 5). Further, the dependent claims also recite that the active network interface module comprises at least two network interface ports to allow an addressing module associated with the active network interface module to communicate with a router network or at least one other message receiving module (e.g., claim 11). Thus, the asserted claim(s) of the '9893 patent are directed to methods performed within a physical system and are not directed to an abstract idea.

91.    The inventions of the asserted claim(s) of the '9893 patent provide the capability of exchanging messages in an integrated circuit where the addressing module issues a request that includes first information, which comprises a connection identifier identifying two or more message receiving modules and an identifier of a passive network interface means associated with the addressed message receiving module, and second information indicative of a particular location within the addressed message receiving module S such as a memory or a register address. The

request is transmitted to an address translation unit within the active network interface module that arranges the first information and second information as a single address, determines the message receiving modules being addressed in the request, and further determines the particular location with the addressed message receiving module S. These elements provide for a unique and unconventional application of network-on-chip technology and allow for processing modules of varying type to exchange messages on connections over an on-chip network.

92.     Thus, the asserted claim(s) of the '9893 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '9893 patent.

93.     The subject matter described and claimed by the '9893 patent, including the method for exchanging messages in an integrated circuit of claim 4, was an improvement in the functionality, performance, and efficiency of integrated circuits, the connections therein and communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '9893 patent.

94.     The '9893 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '9893 patent. On information and belief, such

industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '9893 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

95.    The '9893 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 85 patent applications assigned to industry leaders such as Intel Corporation, Arm Limited, NEC Corporation, IBM Corporation, and others.[25]

96.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

97.    On information and belief, Defendants and their predecessors were aware of and considered the '9893 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

98.    On information and belief, Defendants have expertise in the subject matter of the '9893 patent and possess sufficient technical competence to understand the scope of such patent.

99.    On information and belief, by virtue of Philips's and the '9893 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '9893 patent, Defendants' technical competence to understand the scope of the '9893 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '9893 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants'

---

[25] https://patents.google.com/patent/US7769893B2/ (last visited October 7, 2025).

membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '9893 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation, and in no event later than the date of this Complaint.

100.    As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '9893 patent and infringement of the '9893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and no later than the date of this Complaint.

**U.S. Patent No. 8,072,893**

101.    Plaintiff is the lawful owner of all right, title, and interest in the '2893 patent, entitled "INTEGRATED CIRCUIT WITH DATA COMMUNICATION NETWORK AND IC DESIGN METHOD," including the right to sue and to recover for infringement thereof. The '2893 patent was duly and legally issued on December 6, 2011, naming John Dielissen and Edwin Rijpkema as inventors. A copy of the '2893 patent is attached hereto as Exhibit 6.

102.    The '2893 patent has 12 claims: 5 independent claims and 7 dependent claims.

103.    The '2893 patent covers SoCs that improve data communication speed and frequency synchronization between processing units through the use of packetized data (comprising N data elements) and introduction of a delay (of M*N cycles) on a communication channel, with such delay correlated to the size (N) of the data package.

104.    The claims of the '2893 patent, including claim 10 (reproduced below), recite at least these inventive concepts of the '2893 patent.

10. A method of designing an integrated circuit comprising a plurality of

functional blocks, and a data communication network comprising a plurality of network stations being interconnected via a plurality of communication channels for communicating data packages between the functional blocks, each data package comprising N data elements including a data element comprising routing information for the network stations, N being an integer of at least two, the plurality of network stations comprising a plurality of data routers and a plurality of network interfaces, each of the data routers being coupled to a functional block via a network interface; the method comprising the acts of:

identifying a first communication channel between a first network station and a second network station that has a data transfer delay exceeding a predefined delay threshold; and

in response to the identifying act, inserting M*N data storage elements into the data communication network, M being a positive integer, for introducing a delay of M*N cycles on the first communication channel.

(Exhibit 6, '2893 patent at claim 10.)

105.    The asserted claim(s) of the '2893 patent are directed to a method of designing a system that comprises at least the following physical components: an integrated circuit, a plurality of functional blocks, a data communication network comprising a plurality of network stations being interconnect via a plurality of communication channels, data packages, a plurality of data routers, and a plurality of network interfaces (e.g., claim 10). Thus, the asserted claim(s) of the '2893 patent are directed to a tangible and distinct method of designing a physical system and are not directed to an abstract idea.

106.    The inventions of the asserted claim(s) of the '2893 patent provide the capability of designing an integrated circuit comprising a plurality of functional blocks and a data communication network comprising a plurality of network stations that are interconnect via a plurality of communication channels for communicating data packages between the functional blocks. The inventions of the claim(s) of the '2893 patent specify that each data package comprises N data elements (N being an integer of at least two) and that the plurality of network stations comprise a plurality of data routers and a plurality of network interfaces, wherein each of the data

routers are coupled to a functional block via a network interface. The inventions of the claim(s) of the '2893 patent further specify that the method of designing the integrated circuit comprises two steps: first, identifying a first communication channel between a first network station and a second network station that has a data transfer delay exceeding a predefined delay threshold, and, second, in response to the identifying act, inserting M*N data storage elements into the data communication network, M being a positive integer, for introducing a delay of M*N cycles on the first communication channel. These elements provide for a unique and unconventional application of network-on-chip technology and allow for the design of an integrated circuit having on chip network without data transfer delays that exceed a predetermined threshold.

107.    Thus, the asserted claim(s) of the '2893 patent are directed to specific improvements to integrated circuits, specifically, designing integrated circuits having a network on chip. The claim(s) are directed to a specific field of application, do not preempt others from using the general concept of designing an integrated circuit, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '2893 patent.

108.    The subject matter described and claimed by the '2893 patent, including the method of designing an integrated circuit of claim 10, was an improvement in the functionality, performance, and efficiency of integrated circuits and the communication networks thereof and was novel and not well-understood, routine, or conventional at the time of the '2893 patent.

109.    The '2893 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of

shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '2893 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '2893 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

110.    The '2893 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 14 patent applications assigned to industry leaders such as Intel Corporation and others.[26]

111.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or around the years 2006-2012.

112.    On information and belief, Defendants and their predecessors were aware of and considered the '2893 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

113.    On information and belief, Defendants have expertise in the subject matter of the '2893 patent and possess sufficient technical competence to understand the scope of such patent.

114.    On information and belief, by virtue of Philips's and the '2893 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '2893 patent, Defendants' technical competence to understand the scope of the '2893 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '2893 patent based on Arteris interconnect technology, Defendants' licensing

---

[26] https://patents.google.com/patent/US8072893B2/ (last visited October 7, 2025).

and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '2893 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation, and in no event later than the date of this Complaint.

115.    As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '2893 patent and infringement of the '2893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and no later than the date of this Complaint.

### U.S. Patent No. 8,086,800

116.    Plaintiff is the lawful owner of all right, title, and interest in the '800 patent, entitled "INTEGRATED CIRCUIT AND METHOD FOR BUFFERING TO OPTIMIZE BURST LENGTH IN NETWORKS ON CHIPS," including the right to sue and to recover for infringement thereof. The '800 patent was duly and legally issued on December 27, 2011, naming Andrei Radulescu and Kees Gerard Willem Goossens as inventors. A copy of the '800 patent is attached hereto as Exhibit 7.

117.    The '800 patent has 21 claims: 4 independent claims and 17 dependent claims.

118.    The '800 patent covers SoCs that employ data buffering at requesting (master) and responding (slave) modules and where each module has a network interface with a wrapper that buffers data into optimal amounts for transfer.

119.    The claims of the '800 patent, including claim 12 (reproduced below), recite at least these inventive concepts of the '800 patent.

12. An integrated circuit comprising:

a plurality of processing modules including a first processing module having a first processing memory and a second processing module having a second processing memory;

a plurality of interconnect modules including a first interconnect module and a second interconnect module, wherein the first processing module is connected to the first interconnect module and the second processing module is connected to the second interconnect module; and

a network for connecting the first interconnect module to the second interconnect module in order to provide a communication connection between the first processing module and the second processing module, wherein the first interconnect module is connected between the first processing module and the network, and wherein the second interconnect module is connected between the second processing module and the network;

wherein the first interconnect module includes a first memory for buffering first data from the first processing module, the first interconnect module further including a first determination unit, wherein the first determination unit is configured to determine a first optimal amount of data to be buffered by the first memory, and the second interconnect module includes a second memory for buffering second data from the second processing module, the second interconnect module further including a second determination unit, wherein the second determination unit is configured to determine a second optimal amount of data to be buffered by the second memory,

the first interconnect module transferring the first data to the second processing module when the first data buffered in the first memory reaches the first optimal amount, and the second interconnect module transferring the second data to the first processing module when the second data buffered in the second memory reaches the second optimal amount

wherein at least one of the first determination unit and the second determination unit is further configured to determine an optimal moment for sending the data in said first wrapper or said second wrapper according to communication properties of the communication between the master and the slave, wherein the communication properties include ordering of data transport, flow control including when a remote buffer is reserved for a connection, then a data producer will be allowed to send data only when it is guaranteed that space is available for the produced data at the remote buffer, throughput where a lower bound on throughput is guaranteed, latency where an upper bound for latency is guaranteed, lossiness including dropping of data, transmission termination, transaction completion, data correctness, priority, and data delivery.

(Exhibit 7, '800 patent at claim 12.)

120.    The asserted claim(s) of the '800 patent comprise at least the following physical components: an integrated circuit, a plurality of processing modules including first and second processing modules having first and second processing memories, a plurality of interconnect modules including first and second interconnect modules connected to the first and second processing modules and having memories and determination units, a network connecting the first and second interconnect modules, and a communication and communication properties (e.g., claim 12). Thus, the asserted claim(s) of the '800 patent are directed to a physical system and are not directed to an abstract idea.

121.    The inventions of the asserted claim(s) of the '800 patent provide an integrated circuit having a plurality of interconnect modules connected between a plurality of processing modules and a network, wherein a first interconnect module includes a first determination unit and first memory to determine and buffer a first optimal amount of a first data from a first processing module, a second interconnect module includes a second determination unit and second memory to determine and buffer a second optimal amount of a second data from a second processing module, and the first and second data are transferred to second and first processing modules, respectively, upon buffering of those optimal amounts, with at least one of the determination units configured to determine an optimal moment for sending the data according to certain specified communication properties. These elements provide for the unique and unconventional application of network-on-chip technology to provide better efficiency and resource utilization when communicating between a plurality of modules disposed on a chip.

122.    Thus, the asserted claim(s) of the '800 patent are directed to specific improvements to integrated circuits, specifically, integrated circuits having a network on chip. The claim(s) are

directed to a specific field of application, do not preempt others from using the general concept of exchanging messages between modules, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '800 patent.

123.    The subject matter described and claimed by the '800 patent, including the integrated circuit of claim 12, was an improvement in the functionality, performance, and efficiency of integrated circuits, and the connections therein and communication networks thereof, and was novel and not well-understood, routine, or conventional at the time of the '800 patent.

124.    The '800 patent was developed and patented by Philips Semiconductors, one of the largest semiconductor companies in the world. Because of the size and prominence of Philips in the tight-knit semiconductor industry, industry participants, including, on information and belief, Defendants, monitored patenting activity by Philips and reviewed, and were aware of shortly after their publication, at least the U.S. published patent applications and patents obtained by Philips in the semiconductor space, including the '800 patent. On information and belief, such industry participants, including Defendants, considered Philips's U.S. published patent applications and patents in the semiconductor space, including the '800 patent, and such Philips U.S. published patent applications and patents' actual or potential applicability to their own current products and product roadmaps, including the products described herein.

125.    The '800 patent is widely and publicly known, and frequently referenced, in the tight-knit semiconductor industry, having been cited during prosecution of approximately 15 patent applications assigned to industry leaders such as IBM Corporation and others.[27]

126.    On information and belief, Defendants and their predecessors monitored U.S. published patent applications and patents obtained by Philips in the semiconductor space in or

---

[27] https://patents.google.com/patent/US8086800B2/ (last visited October 7, 2025).

around the years 2006-2012.

127.    On information and belief, Defendants and their predecessors were aware of and considered the '800 patent, and its actual or potential applicability to their own current products and product roadmaps, including the products described herein.

128.    On information and belief, Defendants have expertise in the subject matter of the '800 patent and possess sufficient technical competence to understand the scope of such patent.

129.    On information and belief, by virtue of Philips's and the '800 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '800 patent, Defendants' technical competence to understand the scope of the '800 patent, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '800 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, and RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants had actual knowledge of the '800 patent around the time it issued or its U.S. application published or around the time of Plaintiff's December 2022 litigation, and in no event later than the date of this Complaint.

130.    As explained above, including in paragraphs 24-25, the allegations of which are incorporated herein by reference, Defendants had actual knowledge of the '800 patent and infringement of the '800 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and no later than the date of this Complaint.

## **BACKGROUND OF DEFENDANTS' INFRINGING CONDUCT**

131.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to

130 above.

132.    SoCs are widely used in consumer electronics or computing devices, including smartphones, laptops, tablets, embedded systems (e.g., advanced driver assistance systems), and data centers. SoCs are complex integrated circuits that may incorporate multiple processors, memory units, and interfaces onto a single chip.

133.    As SoCs have developed over time, more processing cores and other IP blocks were incorporated into SoCs, resulting in increased intermodular connections and a greater need for intra-SoC communication efficiency. Thus, intra-SoC communication designs have moved from prior interconnect technologies (e.g., bus or point-to-point designs) to network interconnects, which provide advantages compared to other forms of intra-SoC communication, such as fewer wires, lower routing congestion, and decreased SoC die area, all leading to: smaller devices; increased IP block density, which results in more powerful devices; increased power efficiency, which enables better battery life; decreased thermal load, which leads to longer system life; and improved system performance. Therefore, interconnect efficiency—driven by the pioneering innovations claimed in the Asserted Patents—is now a dominant factor in determining overall SoC system performance, size, and cost.

134.    As discussed above, the Asserted Patents relate to fundamental innovations in SoCs, including how the multitude of processors, memories, and other functional units residing on an SoC are interconnected and communicate with each other.

135.    Defendants are leading semiconductor companies that provide memory units (e.g., DRAM, SSD, etc.).[28] Defendants provide enterprise SSDs, including, for example, the PE8000 enterprise SSD series, which, on information and belief, include controllers developed by

---

[28] https://product.skhynix.com/home.go (last visited October 7, 2025); https://www.skhynix.com/company/UI-FR-CP02 (last visited October 7, 2025).

Defendants, and the controllers include Arteris interconnect technology and/or a derivative thereof.[29] Thus, on information and belief, Defendants make, use, sell, offer for sale, and/or import, or have otherwise made, used, sold, offered for sale, and/or imported, memory units, the components of which include Arteris interconnect technology and/or a derivative thereof.

136.   As set forth in the charts appended hereto, all of which are incorporated herein by reference, the enterprise SSDs, including their incorporation of Arteris interconnect technology and/or a derivative thereof, infringe each of the Asserted Patents.

137.   On information and belief, Defendants' products that infringe the Asserted Patents (collectively, "Accused Products") include the following:

| Accused Products |
|---|
| • SoCs containing network-on-chip technology;<br>• Products, modules, components, and/or systems (e.g., memory units, enterprise SSDs, controllers, etc.) containing network-on-chip technology [30] |

138.   The above-listed Accused Products are non-limiting. Additional products of Defendants may infringe the Asserted Patents, and the above-listed Accused Products may infringe additional patents.

---

[29] https://www.arteris.com/press-releases/sk-hynix-solid-state-storage-device-ssd-controllers-arteris-flexnoc/ (last visited October 7, 2025); https://mis-prod-koce-producthomepage-cdn-01-blob-ep.azureedge.net/web/SK-20201121104029929.pdf (last visited October 7, 2025); *see also* https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).

[30] *See, e.g.*, https://www.arteris.com/press-releases/sk-hynix-solid-state-storage-device-ssd-controllers-arteris-flexnoc/ (last visited October 7, 2025) ("Arteris FlexNoC Interconnect IP is Licensed by SK Hynix for Solid State Storage Device (SSD) Controllers"); https://mis-prod-koce-producthomepage-cdn-01-blob-ep.azureedge.net/web/SK-20201121104029929.pdf (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).

139.    Defendants have infringed and continue to directly infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing, without license or authority, the Accused Products as alleged herein, which embody or use the inventions claimed in the Asserted Patents literally or under the doctrine of equivalents. On information and belief, Defendants do one or more of the following with the Accused Products: (a) manufacture and/or assemble (directly or through third parties) Accused Products that have been used, offered for sale, sold, and purchased in the United States; (b) use Accused Products in the United States (including during development and testing, and other use by Defendants' employees); (c) import Accused Products into the United States for sale to consumers; and (d) sell or offer Accused Products for sale (directly or through third party distributors) in, and from within, the United States, to customers both within and outside the United States.

140.    Comparison of claims of the Asserted Patents to an exemplary product of the Accused Products are attached as Exhibit 8 ('818 patent), Exhibit 9 ('449 patent), Exhibit 10 ('052 patent), Exhibit 11 ('849 patent), Exhibit 12 ('9893 patent), Exhibit 13 ('2893 patent), and Exhibit 14 ('800 patent), all of which are incorporated herein by reference.

141.    With knowledge of the Asserted Patents, infringement thereof, or willful blindness thereto, as alleged herein, Defendants have induced infringement and continue to induce infringement of the Asserted Patents by actively and knowingly inducing others to make, use, sell, offer to sell, and/or import, without license or authority, the Accused Products as alleged herein, which embody the inventions in the system and apparatus claims in the Asserted Patents literally or under the doctrine of equivalents and which inherently and automatically perform the claimed methods in the asserted method claims in the Asserted Patents literally or under the doctrine of equivalents during normal and intended use of the Accused Products. On information and belief,

Defendants induce others to make, use, offer to sell, sell and/or import the Accused Products with knowledge of the Asserted Patents and while knowing that the Accused Products embody the inventions in the system and apparatus claims in the Asserted Patents literally or under the doctrine of equivalents and knowing that the Accused Products inherently and automatically perform the claimed methods in the asserted method claims in the Asserted Patents literally or under the doctrine of equivalents during normal and intended use of the Accused Products. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[31] Additionally, on information and belief, Defendants conduct these inducing activities within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

142.    The Accused Products are intended for integration into devices known to be sold widely in the United States. Defendants make Accused Products which infringe when they are made, used, imported into, sold, or offered for sale in the United States. Defendants indirectly infringe by inducing customers, downstream parties, end users, and others to make, use, sell, offer for sale, or import devices that incorporate Accused Products. For example, Defendants' customers, OEMs, importers, resellers and others who purchase or otherwise obtain Accused Products manufactured at Defendants' overseas facilities and/or supplied by partner foundries, infringe when they make, use, sell, offer for sale, or import Accused Products embodying inventions that infringe the Asserted Patents, and when they make, use, sell, offer for sale, or import devices integrating Accused Products, in the United States. Additionally, on information and belief, Defendants conduct these inducing activities within the United States, rendering

---

[31] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

143.    On information and belief, Accused Products are manufactured for use in third-party devices that have been imported, sold, and offered for sale in the United States. On information and belief, the Accused Products are designed for use in these third-party devices, and therefore Defendants have the specific knowledge and intent that their infringing Accused Products are destined for use in devices sold, offered for sale, and/or imported into the United States. On information and belief, Defendants have taken affirmative steps to encourage or assist the third parties' importation of Accused Products into the United States with knowledge and specific intent to cause acts of direct infringement performed by such third parties. Additionally, on information and belief, Defendants conduct these affirmative steps within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

144.    On information and belief, Defendants work closely with their customers in the processes of selecting integrated circuits and other products appropriate for their customers' specific applications and developing new devices. On information and belief, Defendants are aware that the integrated circuits embodied by and/or incorporated within the infringing Accused Products are integral components of the devices incorporating them, that the infringing integrated circuits are built into the devices and cannot be removed or disabled by a purchaser or end user of the devices containing the infringing integrated circuits, such that Defendants' customers will infringe the Asserted Patents by incorporating such infringing integrated circuits in other devices, and that subsequent importation, sale, and use of such devices in the United States is a direct infringement of the Asserted Patents. Therefore, Defendants are aware that their customers will

infringe one or more claims of the Asserted Patents by importing, selling, offering for sale, and/or using the Accused Products supplied by Defendants. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[32] Additionally, on information and belief, Defendants conduct these inducing activities within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

145.   Defendants directly benefit from and actively and knowingly encourage customers', resellers', and users' importation of Accused Products into the United States and sale and use within the United States. Defendants actively encourage customers, resellers, OEMs, and users to import, use, and sell in the United States the Accused Products that Defendants manufacture and supply, including through advertising, marketing, and sales activities directed at United States sales. On information and belief, Defendants are aware of the size and importance of the United States market for customers of their Accused Products, and also distribute or supply their Accused Products intended for importation, use, offer for sale, and sale in the United States. On information and belief, Defendants compete in the semiconductor market for business directed to the United States. Defendants routinely market their Accused Products to third parties for sales in the United States and/or for inclusion in devices that are sold to customers in the United States. For example, Defendants provide a website that allows customers, resellers, OEMs, and users to locate United States based "Sales Offices" and "Distributors."[33] Defendants additionally advertise the Accused Products, and the benefits of using the Accused Products, which is enabled by

---

[32] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).
[33] https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025).

infringement of the Asserted Patents as described above, including in paragraphs 141-144.[34] Defendants' marketing efforts show that they have specifically intended to and have induced direct infringement in the United States. Additionally, on information and belief, Defendants conduct these marketing efforts within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

146.    Defendants also provide OEMs, manufacturers, importers, resellers, customers, and end users instructions, data, tools, user guides, technical resources, and technical specifications on how to operate the Accused Products and how to incorporate the Accused Products into devices that are made, used, sold, offered for sale in and/or imported into the United States. For example, Defendants offer support services to United States based OEMs, manufacturers, importers, resellers, customers, and end users that encourage said end users to use the Accused Products in an infringing manner.[35] When OEMs, manufacturers, importers, resellers, customers, and end users follow such instructions, data, tools, user guides, technical resources, and technical specifications and operate the Accused Products or embed the Accused Products in devices and make, use, offer to sell, sell, or import those devices into the United States, they directly infringe claims of the Asserted Patents. Defendants know that by providing such instructions, data, tools, user guides, technical resources, and technical specifications, OEMs, manufacturers, importers, resellers, customers, and end users follow them, and therefore directly infringe one or more claims of the Asserted Patents. Defendants thus know that their actions actively induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest

---

[34] https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025).
[35] https://product.skhynix.com/support/process.go (last visited October 7, 2025).

materials on product strengths."[36] Additionally, on information and belief, Defendants conduct these support activities within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

147.    Defendants have engaged and will continue to engage in additional activities to specifically target the United States market for the Accused Products and actively induce manufacturers, importers, resellers, customers, and end users to directly infringe the Asserted Patents in the United States. On information and belief, Defendants have showcased their Accused Products and related technologies at various industry events, such as GTC, SEMICON Korea, CES, and others, and through written materials distributed in the United States, and through Defendants' websites in an effort to encourage customers to use the Accused Products or include the Accused Products in their devices.[37] On information and belief, these events are attended by direct infringers that make, use, offer to sell, sell, or import in the United States the Accused Products or devices that incorporate Defendants' Accused Products, as well as companies that use memory units such as those made by Defendants. Defendants' website also enables customers to locate United States-based distributors of Defendants' Accused Products.[38] Additionally, on information and belief, Defendants conduct these marketing efforts within the United States, rendering Accused Products made, used, sold, offered for sale, or delivered both inside and outside the United States infringing.

148.    Defendants derive significant revenue by selling the Accused Products to third parties who directly infringe the Asserted Patents in the United States. Defendants' extensive sales

---

[36] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).
[37] https://news.skhynix.com/ (last visited October 7, 2025); https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025).
[38] https://product.skhynix.com/support/contact/global.go (last visited October 7, 2025).

and marketing efforts, sales volume, and partnerships all evidence their intent to induce companies to infringe the Asserted Patents by making, using, offering to sell, selling, or importing devices that incorporate the Accused Products in the United States. Defendants have had specific intent to induce infringement or have been willfully blind to the direct infringement they are inducing.

149.    As explained above in paragraphs 24-130, the allegations of which are incorporated herein by reference, on information and belief, Defendants had knowledge of each of the Asserted Patents, including infringement of the Asserted Patents by Defendants and/or their customers or end users, or were willfully blind to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, prior to the date of this Complaint, including at least as of the dates of knowledge alleged above, and no later than the date of this Complaint. As explained in these paragraphs, on information and belief, Defendants' pre-suit knowledge for each of the Asserted Patents and infringement of the Asserted Patents by Defendants and/or their customers or end users, or willful blindness to such infringement, results from a combination of factors, including Philips's and the Asserted Patents' fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the Asserted Patents based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of  information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the Asserted Patents, Defendants' technical competence to understand the scope of the Asserted Patents, Defendants' intimate familiarity with their Accused Products, and evaluations of the Asserted Patents performed by Defendants. On information and belief, discovery in this Case,

including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the Asserted Patents.

150.    Moreover, as shown in the charts appended as Exhibit 8 ('818 patent), Exhibit 9 ('449 patent), Exhibit 10 ('052 patent), Exhibit 11 ('849 patent), Exhibit 12 ('9893 patent), Exhibit 13 ('2893 patent), and Exhibit 14 ('800 patent), the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed in paragraphs 139-148, the allegations of which are incorporated herein by reference, the Accused Products necessarily infringe the Asserted Patents as made, used, offered for sale, sold, and/or imported and during their normal and intended use and, therefore, because Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products to be made, used, sold, offered for sale and/or imported for the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the Asserted Patents, Defendants possess specific intent to infringe and induce infringement. For example, Defendants, or an entity under their direction or control, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof on their website.[39] Defendants, or one or more related entities, further publish and distribute product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[40] Therein, on information and belief, Defendants describe and tout the use of the subject

---

[39] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).
[40] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7,

matter claimed in the Asserted Patents, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[41]

151.    Defendants have contributorily infringed and continue to contributorily infringe the Asserted Patents by selling or offering to sell Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the Asserted Patents and not a staple article or commodity of commerce suitable for substantial non-infringing use. As explained above in paragraphs 24-130, the allegations of which are incorporated herein by reference, on information and belief, Defendants had knowledge of each of the Asserted Patents.

152.    On information and belief, and as alleged above, Defendants have known of the existence of the Asserted Patents and their applicability to the Accused Products, including infringement of the Asserted Patents by Defendants and/or their customers or end users, or willful blindness to such infringement, and their acts of infringement have been willful and/or willfully blind and in disregard for the Asserted Patents, without any reasonable basis for believing that they had a right to engage in the infringing conduct, at least as of the dates of knowledge of the Asserted Patents alleged above, and no later than the date of this Complaint. As explained above in paragraphs 24-130, the allegations of which are incorporated herein by reference, on information and belief, Defendants had knowledge of each of the Asserted Patents.

---

2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[41] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,366,818

153.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 152 above.

154.    On information and belief, Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '818 patent in violation of 35 U.S.C. § 271(a), including claim 1. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 1 of the '818 patent to an exemplary product of the Accused Products is attached as Exhibit 8, which is incorporated herein by reference.

155.    On information and belief, with knowledge of the '818 patent, Defendants have actively induced the direct infringement of one or more claims of the '818 patent, including claim 1, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '818 patent, including claim 1, with the intent to encourage those customers and/or end users to infringe the '818 patent.

156.    As explained above in paragraphs 26-40 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '818 patent, including infringement of the '818 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent

infringement, before the date of this Complaint and expiration date of the '818 patent. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the'818 patent.

157.    By way of example, on information and belief, Defendants actively induced infringement of the '818 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '818 patent, including claim 1. For example, as described above, Defendants actively marketed, advertised, offered for sale, and/or otherwise promoted the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '818 patent.

158.    As shown in the chart appended as Exhibit 8, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed above in paragraphs 139-148, the Accused Products necessarily infringe the '818 patent as made, used, offered for sale, sold, and imported and during their normal and intended use and operation and, therefore, because Defendants marketed, advertised, offered for sale, and/or otherwise promoted the Accused Products and the normal and intended use and operation thereof and, on information and belief, did so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '818 patent, Defendants possessed specific intent to infringe. For example,

Defendants, or one or more entities under Defendants' direction or control, advertised, offered for sale, and/or otherwise promoted the Accused Products and the normal and intended use and operation thereof on their website.[42] Defendants, or one or more related entities, further published and distributed product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[43] Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '818 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[44]

159.   On information and belief, with knowledge of the '818 patent, Defendants also contributed to the infringement of one or more claims of the '818 patent, including claim 1, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '818 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the

---

[42] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).
[43] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/support/ssd/essd/pe8000.go (last visited October 7, 2025).
[44] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

'818 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '818 patent.

160.    As explained above in paragraphs 26-40 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '818 patent, including infringement of the '818 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, before the date of this Complaint and expiration date of the '818 patent. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '818 patent.

161.    On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '818 patent, including claim 1. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the dates of knowledge of the '818 patent alleged above, and no later than the expiration date of the '818 patent.

162.    On information and belief, with knowledge of the '818 patent, Defendants have

willfully, deliberately, and intentionally infringed the '818 patent, at least as of the dates of knowledge of the '818 patent alleged above, and no later than the expiration date of the '818 patent. On information and belief, Defendants had actual knowledge of the '818 patent and infringement of the '818 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '818 patent alleged above, and no later than the expiration date of the '818 patent. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '818 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '818 patent at least because Defendants were aware of the '818 patent and infringement of the '818 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '818 patent alleged above, and no later than the expiration date of the '818 patent. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '818 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '818 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '818 patent, Defendants' technical competence to understand the scope of the '818 patent, Defendants' intimate familiarity with their Accused Products, and evaluation of the '818 patent performed by Defendants.

163.    Defendants, by way of their infringing activities, have caused Plaintiff to suffer

damages. Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '818 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,373,449

164.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 163 above.

165.   On information and belief, Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '449 patent in violation of 35 U.S.C. § 271(a), including claim 10. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 10 of the '449 patent to an exemplary product of the Accused Products is attached as Exhibit 9, which is incorporated herein by reference.

166.   On information and belief, with knowledge of the '449 patent, Defendants have actively induced the direct infringement of one or more claims of the '449 patent, including claim 10, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '449 patent, including claim 10, with the intent to encourage those customers and/or end users to infringe the '449 patent.

167.   As explained above in paragraphs 41-55 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the

'449 patent, including infringement of the '449 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, before the date of this Complaint and expiration date of the '449 patent. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '449 patent.

168.    By way of example, on information and belief, Defendants actively induced infringement of the '449 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '449 patent, including claim 10. For example, as described above, Defendants actively marketed, advertised, offered for sale, and/or otherwise promoted the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '449 patent.

169.    As shown in the chart appended as Exhibit 9, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed above in paragraphs 139-148, the Accused Products necessarily infringe the '449 patent as made, offered for sale, sold, used and imported and during their normal and intended use and operation and, therefore, because Defendants marketed, advertised, offered for sale, and/or otherwise promoted the Accused Products and the normal and intended use and operation thereof and, on information

and belief, did so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '449 patent, Defendants possessed specific intent to infringe. For example, Defendants, or one or more entities under Defendants' direction or control, advertised, offered for sale, and/or otherwise promoted the Accused Products and the normal and intended use and operation thereof on their website.[45] Defendants, or one or more related entities, further published and distributed product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[46] Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '449 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[47]

170.    On information and belief, with knowledge of the '449 patent, Defendants also contributed to the infringement of one or more claims of the '449 patent, including claim 10, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '449

---

[45] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).
[46] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[47] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the '449 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '449 patent.

171. As explained above in paragraphs 41-55 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '449 patent, including infringement of the '449 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, before the date of this Complaint and expiration date of the '449 patent. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '449 patent.

172. On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '449 patent, including claim 10. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the

Accused Products, at least as of the dates of knowledge of the '449 patent alleged above, and no later than the expiration date of the '449 patent.

173.    On information and belief, with knowledge of the '449 patent, Defendants have willfully, deliberately, and intentionally infringed the '449 patent, at least as of the dates of knowledge of the '449 patent alleged above, and no later than the expiration date of the '449 patent. On information and belief, Defendants had actual knowledge of the '449 patent and infringement of the '449 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '449 patent alleged above, and no later than the expiration date of the '449 patent. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '449 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '449 patent at least because Defendants were aware of the '449 patent and infringement of the '449 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '449 patent alleged above, and no later than the expiration date of the '449 patent. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '449 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '449 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '449 patent, Defendants' technical

competence to understand the scope of the '449 patent, Defendants' intimate familiarity with their Accused Products, and evaluation of the '449 patent performed by Defendants.

174.    Defendants, by way of their infringing activities, have caused Plaintiff to suffer damages. Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '449 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,594,052

175.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 174 above.

176.    On information and belief, Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '052 patent in violation of 35 U.S.C. § 271(a), including claim 6. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 6 of the '052 patent to an exemplary product of the Accused Products is attached as Exhibit 10, which is incorporated herein by reference.

177.    On information and belief, with knowledge of the '052 patent, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '052 patent, including claim 6, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, at least claim 6 of the '052 patent, with the intent to encourage those customers and/or end users to infringe the '052

patent.

178.    As explained above in paragraphs 56-70 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '052 patent, including infringement of the '052 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '052 patent.

179.    By way of example, on information and belief, Defendants actively induce infringement of the '052 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that infringes one or more claims of the '052 patent, including claim 6. For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '052 patent.

180.    As shown in the chart appended as Exhibit 10, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed in paragraphs 139-148, the Accused Products necessarily infringe the '052 patent as made, used, offered for sale, sold, and imported and during their normal and intended use and operation and, therefore, because

Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '052 patent, Defendants possess specific intent to infringe. For example, Defendants, or one or more entities under Defendants' direction or control, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof on their website.[48] Defendants, or one or more related entities, further publish and distribute product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[49] Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '052 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[50]

181.    On information and belief, with knowledge of the '052 patent, Defendants also contributed to, and continue to contribute to, the infringement of one or more claims of the '052

---

[48] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).
[49] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[50] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

patent, including claim 6, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '052 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the '052 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '052 patent.

182.    As explained above in paragraphs 56-70 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '052 patent, including infringement of the '052 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '052 patent.

183.    On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported, and continue to make, use, sell, offer to sell, or import, Defendants' products, including the Accused Products, in ways that directly infringe at least claim 6 of the '052 patent. On information and belief, Defendants had actual knowledge of their customers' and/or end users'

direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the dates of knowledge of the '052 patent alleged above, and no later than the date of this Complaint.

184.    On information and belief, with knowledge of the '052 patent, Defendants have willfully, deliberately, and intentionally infringed the '052 patent, at least as of the dates of knowledge of the '052 patent alleged above, and no later than the date of this Complaint, and continue to willfully, deliberately, and intentionally infringe the '052 patent. On information and belief, Defendants had actual knowledge of the '052 patent and infringement of the '052 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '052 patent alleged above, and no later than the date of this Complaint. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '052 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '052 patent at least because Defendants were aware of the '052 patent and infringement of the '052 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '052 patent alleged above, and no later than the date of this Complaint. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '052 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '052 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of information to its members (including

Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '052 patent, Defendants' technical competence to understand the scope of the '052 patent, and Defendants' intimate familiarity with its Accused Products, and evaluation of the '052 patent performed by Defendants. Additionally, Defendants were aware of the '052 patent, and infringement of the '052 patent by Defendants and/or their customers or end users, at least as of the date of this Complaint because Plaintiff notified Defendants of such.

185.    On information and belief, Defendants will continue to infringe the '052 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and have caused and are causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '052 patent, Plaintiff will continue to suffer irreparable harm.

186.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '052 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,613,849

187.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 186 above.

188.    On information and belief, Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '849 patent in violation of 35 U.S.C. § 271(a), including claim 1. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 1 of the '849 patent to an

exemplary product of the Accused Products is attached as Exhibit 11, which is incorporated herein by reference.

189.    On information and belief, with knowledge of the '849 patent, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '849 patent, including claim 1, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '849 patent, including claim 1, with the intent to encourage those customers and/or end users to infringe the '849 patent.

190.    As explained above in paragraphs 71-85 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '849 patent, including infringement of the '849 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '849 patent.

191.    By way of example, on information and belief, Defendants actively induce infringement of the '849 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that

infringes at least one claim of the '849 patent, including claim 1. For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '849 patent.

192.    As shown in the chart appended as Exhibit 11, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed above in paragraphs 139-148, the Accused Products necessarily infringe the '849 patent as made, offered for sale, sold, used and imported and during their normal and intended use and operation and, therefore, because Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '849 patent, Defendants possess specific intent to infringe. For example, Defendants, or one or more entities under Defendants' direction or control, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof on their website.[51] Defendants, or one or more related entities, further publish and distribute product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[52] Therein, on information and belief, Defendants describe and tout the use of the subject

---

[51] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).

[52] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7,

matter claimed in the '849 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[53]

193.    On information and belief, with knowledge of the '849 patent, Defendants also contributed to, and continue to contribute to, the infringement of one or more claims of the '849 patent, including claim 1, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '849 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the '849 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '849 patent.

194.    As explained above in paragraphs 71-85 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '849 patent, including infringement of the '849 patent by Defendants and/or their customers or end

---

2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[53] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '849 patent.

195.    On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported, and continue to make, use, sell, offer to sell, or import, Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '849 patent, including claim 1. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the dates of knowledge of the '849 patent alleged above, and no later than the date of this Complaint.

196.    On information and belief, with knowledge of the '849 patent, Defendants have willfully, deliberately, and intentionally infringed the '849 patent, at least as of the dates of knowledge of the '849 patent alleged above, and no later than the date of this Complaint, and continue to willfully, deliberately, and intentionally infringe the '849 patent. On information and belief, Defendants had actual knowledge of the '849 patent and infringement of the '849 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '849 patent alleged above, and no later than the date of this Complaint. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '849 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '849

patent at least because Defendants were aware of the '849 patent and infringement of the '849 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '849 patent alleged above, and no later than the date of this Complaint. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '849 patent's fame in the semiconductor industry, Defendants' expertise and interest in the subject matter of the '849 patent, Defendants' technical competence to understand the scope of the '849 patent, Defendants' intimate familiarity with their Accused Products, and evaluation of the '849 patent performed by Defendants. Additionally, Defendants were aware of the '849 patent, and infringement of the '849 patent by Defendants and/or their customers or end users, at least as of the date of this Complaint because Plaintiff notified Defendants of such.

197.    On information and belief, Defendants will continue to infringe the '849 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and have caused and are causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '849 patent, Plaintiff will continue to suffer irreparable harm.

198.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '849 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 7,769,893

199.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 198

above.

200.    On information and belief, Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '9893 patent in violation of 35 U.S.C. § 271(a), including claim 4. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 4 of the '9893 patent to an exemplary product of the Accused Products is attached as Exhibit 12, which is incorporated herein by reference.

201.    On information and belief, with knowledge of the '9893 patent, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '9893 patent, including claim 4, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '9893 patent, including claim 4, with the intent to encourage those customers and/or end users to infringe the '9893 patent.

202.    As explained above in paragraphs 86-100 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '9893 patent, including infringement of the '9893 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the

details of Defendants' knowledge of, and knowing infringement of, the '9893 patent.

203.    By way of example, on information and belief, Defendants actively induce infringement of the '9893 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '9893 patent, including claim 4. For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '9893 patent.

204.    As shown in the chart appended as Exhibit 12, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed in paragraphs 139-148, the Accused Products necessarily infringe the '9893 patent as made, used, offered for sale, sold, and imported and during their normal and intended use and operation and, therefore, because Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '9893 patent, Defendants possess specific intent to infringe. For example, Defendants, or one or more entities under Defendants' direction or control, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof on their

website.[54] Defendants, or one or more related entities, further publish and distribute product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[55] Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '9893 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[56]

205.    On information and belief, with knowledge of the '9893 patent, Defendants also contributed to, and continue to contribute to, the infringement of one or more claims of the '9893 patent, including claim 4, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '9893 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the '9893 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among

---

[54] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).
[55] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[56] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '9893 patent.

206.    As explained above in paragraphs 86-100 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '9893 patent, including infringement of the '9893 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '9893 patent.

207.    On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported, and continue to make, use, sell, offer to sell, or import, Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '9893 patent, including claim 4. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the dates of knowledge of the '9893 patent alleged above, and no later than the date of this Complaint.

208.    On information and belief, with knowledge of the '9893 patent, Defendants have willfully, deliberately, and intentionally infringed the '9893 patent, at least as of the dates of knowledge of the '9893 patent alleged above, and no later than the date of this Complaint, and

continue to willfully, deliberately, and intentionally infringe the '9893 patent. On information and belief, Defendants had actual knowledge of the '9893 patent and infringement of the '9893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '9893 patent alleged above, and no later than the date of this Complaint. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '9893 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '9893 patent at least because Defendants were aware of the '9893 patent and infringement of the '9893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '9893 patent alleged above, and no later than the date of this Complaint. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '9893 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '9893 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of  information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '9893 patent, Defendants' technical competence to understand the scope of the '9893 patent, Defendants' intimate familiarity with its Accused Products, and evaluation of the '9893 patent performed by Defendants. Additionally, Defendants were aware of the '9893 patent, and infringement of the '9893 patent by Defendants and/or their customers or end users, at least as of the date of this Complaint because Plaintiff notified

Defendants of such.

209.    On information and belief, Defendants will continue to infringe the '9893 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and have caused and are causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '9893 patent, Plaintiff will continue to suffer irreparable harm.

210.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '9893 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

<u>**COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 8,072,893**</u>

211.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 210 above.

212.    On information and belief, Defendants have practiced the design method of claim 10 of the '2893 patent, and have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, made or designed by processes that infringe, either literally or under the doctrine of equivalents, one or more claims of the '2893 patent in violation of 35 U.S.C. § 271(a), including claim 10. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 10 of the '2893 patent to an exemplary product of the Accused Products made or designed by infringing processes is attached as Exhibit 13, which is incorporated herein by reference.

213.    On information and belief, with knowledge of the '2893 patent, Defendants have actively induced the direct infringement of one or more claims of the '2893 patent, including

claim 10, in violation of 35 U.S.C. § 271(b), by their subsidiaries and/or third-party subcontractors that assist in the design of the Defendants' products, including at least the Accused Products, by instructing, supporting, and/or otherwise encouraging their subsidiaries and/or third-party subcontractors to directly infringe, either literally and/or under the doctrine of equivalents one or more of claims of the '2893 patent, including at least claim 10, with the intent to encourage those customers and/or end users to infringe the '2893 patent.

214.    As explained above in paragraphs 101-115 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '2893 patent, including infringement of the '2893 patent by Defendants and/or their suppliers, subsidiaries, or third-party subcontractors, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '2893 patent.

215.    By way of example, on information and belief, Defendants actively induce infringement of the '2893 patent, in violation of 35 U.S.C. § 271(b), by encouraging, instructing, and aiding one or more persons in the United States and/or outside the United States, including but not limited to suppliers who supply and/or design components (for example, semiconductor IPs), to make, test, operate, and/or design Defendants' products, including at least the Accused Products or components thereof (for example, semiconductor IPs),  in a manner that infringes one or more claims of the '2893 patent, including claim 10. For example, on information and belief, Defendants provide their suppliers, subsidiaries, or third-party subcontractors with specifications and/or

designs for components, including by way of example, semiconductor IPs, for the Accused Products. Therein, on information and belief, Defendants describe, encourage, and instruct the use of the design method claimed in the '2893 patent.

216. As shown in the chart appended as Exhibit 13, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed in paragraphs 139-148, the Accused Products were necessarily made by a process that infringes the '2893 patent to provide characteristics and capabilities invoked during their normal and intended use and operation and, therefore, because Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and/or aid their suppliers, subsidiaries, and third-party subcontractors in the United States to design and/or make the Accused Products with knowledge of the '2893 patent, Defendants possess specific intent to infringe. For example, Defendants, or one or more related entities, publish and distribute product briefs, data sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended characteristics and operation thereof.[57] On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement.

217. On information and belief, as a result of Defendants' inducement of infringement, their suppliers, subsidiaries, and/or third-party subcontractors designed and/or made, and continue to design and/or make, Defendants' products, including the Accused Products or components thereof (for example, semiconductor IPs), in ways that directly infringe at least claim 10 of the

---

[57] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).

'2893 patent. On information and belief, Defendants had actual knowledge of their suppliers', subsidiaries', and/or third-party subcontractors' direct infringement at least by virtue of their encouragement, description, and/or instruction to use the design method claimed in the '2893 patent in the design of Defendants' products, including the Accused Products or components thereof (for example, semiconductor IPs), at least as of the dates of knowledge of the '2893 patent alleged above, and no later than the date of this Complaint.

218.    On information and belief, with knowledge of the '2893 patent, Defendants have willfully, deliberately, and intentionally infringed the '2893 patent, at least as of the dates of knowledge of the '2893 patent alleged above, and no later than the date of this Complaint, and continue to willfully, deliberately, and intentionally infringe the '2893 patent. On information and belief, Defendants had actual knowledge of the '2893 patent and infringement of the '2893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '2893 patent alleged above, and no later than the date of this Complaint. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '2893 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '2893 patent at least because Defendants were aware of the '2893 patent and infringement of the '2893 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '2893 patent alleged above, and no later than the date of this Complaint. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's the '2893 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and

regarding infringement of the '2893 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of  information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '2893 patent, Defendants' technical competence to understand the scope of the '2893 patent, Defendants' intimate familiarity with its Accused Products, and evaluation of the '2893 performed by Defendants. Additionally, Defendants were aware of the '2893 patent, and infringement of the '2893 patent by Defendants and/or their customers or end users, at least as of the date of this Complaint because Plaintiff notified Defendants of such.

219.    On information and belief, Defendants will continue to infringe the '2893 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and have caused and are causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '2893 patent, Plaintiff will continue to suffer irreparable harm.

220.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '2893 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 8,086,800

221.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 220 above.

222.    On information and belief, Defendants have made, used, offered for sale, sold,

and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '800 patent in violation of 35 U.S.C. § 271(a), including claim 12. Defendants have performed one or more of these infringing acts in the United States and within this Judicial District. A comparison of claim 12 of the '800 patent to an exemplary product of the Accused Products is attached as Exhibit 14, which is incorporated herein by reference.

223.    On information and belief, with knowledge of the '800 patent, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '800 patent, including claim 12, in violation of 35 U.S.C. § 271(b), by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging their customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, at least claim 12 of the '800 patent, with the intent to encourage those customers and/or end users to infringe the '800 patent.

224.    As explained above in paragraphs 116-130 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '800 patent, including infringement of the '800 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '800 patent.

225.    By way of example, on information and belief, Defendants actively induce

infringement of the '800 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and/or end users who test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, offer to sell, and/or import Defendants' products, including at least the Accused Products, in a manner that infringes one or more claims of the '800 patent, including claim 12. For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '800 patent.

226.    As shown in the chart appended as Exhibit 14, the allegations of which are incorporated herein by reference, and the materials cited therein, and as discussed in paragraphs 139-148, the Accused Products necessarily infringe the '800 patent as made, used, offered for sale, sold, and imported and during their normal and intended use and operation and, therefore, because Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof and, on information and belief, do so to actively and knowingly induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, offer to sell and/or import the Accused Products with knowledge of the '800 patent, Defendants possess specific intent to infringe. For example, Defendants, or one or more entities under Defendants' direction or control, advertise, offer for sale, and/or otherwise promote the Accused Products and the normal and intended use and operation thereof on their website.[58] Defendants, or one or more related entities, further publish and distribute product briefs, data

---

[58] *See, e.g.*, https://product.skhynix.com/products/ssd/essd.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/cssd.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025); https://product.skhynix.com/products/ssd/ssd.go (last visited October 7, 2025).

sheets, manuals, guides, test reports, specifications, videos, and other authorized resources for the Accused Products and the normal and intended use and operation thereof.[59] Therein, on information and belief, Defendants describe and tout the use of the subject matter claimed in the '800 patent, as described and alleged herein. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' specific intent to induce infringement. Additional evidence of inducement includes Defendants' publicly available website, which includes a "Sales Kit" page that provides "news on upcoming SK hynix products and the latest materials on product strengths."[60]

227.    On information and belief, with knowledge of the '800 patent, Defendants also contributed to, and continue to contribute to, the infringement of one or more claims of the '800 patent, including claim 12, in violation of 35 U.S.C. § 271(c), by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the '800 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of the Accused Products, which are especially made or especially adapted for use in infringement of the '800 patent as made, used, offered for sale, sold, and imported and when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '800 patent.

---

[59] *See, e.g.*, https://product.skhynix.com/support/downloads/techs.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025) https://ssd.skhynix.com/beetle_x31/ (last visited October 7, 2025); https://product.skhynix.com/products/ssd/essd/pe8000.go (last visited October 7, 2025).
[60] https://product.skhynix.com/support/downloads.go (last visited October 7, 2025); https://product.skhynix.com/support/downloads/kits.go (last visited October 7, 2025).

228.    As explained above in paragraphs 116-130 (and the paragraphs cited therein), the allegations of which are incorporated herein by reference, Defendants have had knowledge of the '800 patent, including infringement of the '800 patent by Defendants and/or their customers or end users, or willful blindness to such infringement, and Defendants had knowledge or willful blindness that their affirmative acts to encourage infringement in fact constituted patent infringement, both before and after the date of this Complaint. On information and belief, discovery in this Case, including from Defendants and other sources, will further confirm the details of Defendants' knowledge of, and knowing infringement of, the '800 patent.

229.    On information and belief, as a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, offered for sale, or imported, and continue to make, use, sell, offer to sell, or import, Defendants' products, including the Accused Products, in ways that directly infringe at least claim 12 of the '800 patent. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the dates of knowledge of the '800 patent alleged above, and no later than the date of this Complaint.

230.    On information and belief, with knowledge of the '800 patent, Defendants have willfully, deliberately, and intentionally infringed the '800 patent, at least as of the dates of knowledge of the '800 patent alleged above, and no later than the date of this Complaint, and continue to willfully, deliberately, and intentionally infringe the '800 patent. On information and belief, Defendants had actual knowledge of the '800 patent and infringement of the '800 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '800 patent alleged above, and no later than the date of

this Complaint. On information and belief, after acquiring that knowledge, Defendants continued to directly and indirectly infringe the '800 patent as set forth above. On information and belief, Defendants knew or should have known that their conduct amounted to infringement of the '800 patent at least because Defendants were aware of the '800 patent and infringement of the '800 patent by Defendants and/or their customers or end users, or were willfully blind to such infringement, at least as of the dates of knowledge of the '800 patent alleged above, and no later than the date of this Complaint. On information and belief, Defendants were aware of infringement by Defendants and/or their customers or end users, or were willfully blind to such infringement, by virtue of Philips's and the '800 patent's fame in the semiconductor industry, Plaintiff's December 2022 litigation involving notable companies in Defendants' industry and regarding infringement of the '800 patent based on Arteris interconnect technology, Defendants' licensing and use of the Arteris interconnect technology in Defendants' Accused Products, Defendants' membership with RPX, RPX's notification and provision of information to its members (including Defendants) of Plaintiff's December 2022 litigation, Defendants' expertise and interest in the subject matter of the '800 patent, Defendants' technical competence to understand the scope of the '800 patent, Defendants' intimate familiarity with its Accused Products, and evaluation of the '800 patent performed by Defendants. Additionally, Defendants were aware of the '800 patent, and infringement of the '800 patent by Defendants and/or their customers or end users, at least as of the date of this Complaint because Plaintiff notified Defendants of such.

231.    On information and belief, Defendants will continue to infringe the '800 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and have caused and are causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law

against Defendants' acts of infringement and, unless Defendants are enjoined from their infringement of the '800 patent, Plaintiff will continue to suffer irreparable harm.

232.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '800 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Network System Technologies, LLC requests that the Court enter judgment for Plaintiff and against Defendants SK hynix Inc. and SK hynix America Inc. and enter the following relief:

A.    A judgment that Defendants directly and/or indirectly infringed or infringe the following Asserted Patents:

| |
|---|
| U.S. Patent No. 7,366,818 (Exhibit 1, "'818 patent") |
| U.S. Patent No. 7,373,449 (Exhibit 2, "'449 patent") |
| U.S. Patent No. 7,594,052 (Exhibit 3, "'052 patent") |
| U.S. Patent No. 7,613,849 (Exhibit 4, "'849 patent") |
| U.S. Patent No. 7,769,893 (Exhibit 5, "'9893 patent") |
| U.S. Patent No. 8,072,893 (Exhibit 6, "'2893 patent") |
| U.S. Patent No. 8,086,800 (Exhibit 7, "'800 patent") |

B.    A preliminary and permanent injunction restraining and enjoining Defendants, their officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing any unexpired Asserted Patents;

C.    An award of damages to Plaintiff arising from Defendants' past and continuing infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

D.    A determination that Defendants' infringement of the Asserted Patents has been willful, and an award of treble damages to Plaintiff pursuant to 35 U.S.C. § 284;

E.    A determination that this is an exceptional case and awarding Plaintiff's attorneys' fees pursuant to 35 U.S.C. § 285;

F.    An order awarding Plaintiff costs and expenses in this action;

G.    An order awarding Plaintiff pre- and post-judgment interest on its damages; and

H.    Such other and further relief in law or in equity as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff respectfully requests a jury trial on all issues so triable.

Date:    October 14, 2025                          Respectfully submitted,

                                                   /s/ *Daniel S. Stringfield w/ permission*
                                                   <u>*William E. Davis, III*</u>
                                                   William E. Davis, III (State Bar. No. 24047416)
                                                   Ty Wilson (State Bar No. 24106583)
                                                   **DAVIS FIRM PC**
                                                   213 N. Fredonia Street, Suite 230
                                                   Longview, TX 75601
                                                   (903) 230-9090
                                                   bdavis@davisfirm.com
                                                   twilson@davisfirm.com

                                                   Daniel S. Stringfield
                                                   Timothy Maloney
                                                   Michael W. Gray
                                                   Matthew M. Zuziak
                                                   Peter C. Krusiewicz
                                                   Allison E. Strong
                                                   **NIXON PEABODY LLP**
                                                   70 West Madison St., Suite 5200
                                                   Chicago, IL 60602
                                                   (312) 977-4130
                                                   nst@nixonpeabody.com
                                                   dstringfield@nixonpeabody.com
                                                   tmaloney@nixonpeabody.com
                                                   mgray@nixonpeabody.com
                                                   mzuziak@nixonpeabody.com
                                                   pkrusiewicz@nixonpeabody.com
                                                   astrong@nixonpeabody.com

                                                   Alec M. Royka
                                                   **NIXON PEABODY LLP**
                                                   677 Broadway, 10th Floor
                                                   Albany, NY 12207
                                                   (518) 427-2650
                                                   aroyka@nixonpeabody.com

                                                   *Attorneys for Plaintiff Network System*
                                                   *Technologies, LLC*