**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SK HYNIX INC.; SK HYNIX AMERICA INC., <br><br> *Defendants*. | Civil Action No. 1:25-cv-01647-ADA <br><br> Judge Alan D. Albright <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S PRE-SUIT
<u>INDIRECT AND WILLFUL INFRINGEMENT ALLEGATIONS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 1

III.    LEGAL STANDARDS ............................................................................................. 3

IV.    ARGUMENT ............................................................................................................ 5

    A.    NST Fails to Plausibly Allege Indirect Infringement ............................................. 5

        1.    NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the Asserted Patents ..................................................................................... 5

        2.    NST Also Does Not Plausibly Allege That SK hynix Had the Requisite Knowledge for Either Contributory or Induced Infringement ...................................................................................... 10

            a.    NST does not adequately plead its pre-suit contributory infringement claim ...................................................................... 10

            b.    NST does not adequately plead its pre-suit induced infringement claim ...................................................................... 12

    B.    NST Does Not Plausibly Allege Pre-suit Willful Infringement ........................... 14

        1.    NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the Asserted Patents ................................................................................... 14

        2.    NST Fails to Plausibly Allege SK hynix Had the Requisite Knowledge of Infringement .................................................................... 14

V.    CONCLUSION ...................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*Advanced Coding Techs. LLC v. Google LLC*,
759 F. Supp. 3d 755 (E.D. Tex. 2024)...................................................................... 5, 10

*Aeritas, LLC v. Darden Corp.*,
No. 6:20-cv-938-ADA, 2021 WL 4868430 (W.D. Tex. Oct. 18, 2021)........................ 4, 7, 15

*Affinity Lab'ys of Tex., LLC v. Toyota Motor N. Am., Inc.*,
No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .................................. 4, 13

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994)...................................................................................... 11, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................... 4

*Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*,
661 F. Supp. 3d 643 (W.D. Tex. 2023)............................................................................. 6

*Atlas Glob. Techs., LLC v. Sercomm Corp.*,
638 F. Supp. 3d 721 (W.D. Tex. 2022)........................................................................... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 3

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022)....................................................................... 4, 16

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ................. 13

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018).................................. 14

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)....................................................................................... 10

*Flypsi, Inc. v. Google LLC*,
No. 6:22-cv-31-ADA, 2022 WL 3593053 (W.D. Tex. Aug. 22, 2022) .............................. 7, 9

*Fractus, S.A. v. TCL Corp.*,
No. 2:20-cv-97, 2021 WL 2483155 (E.D. Tex. June 2, 2021) ......................................... 15

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)............................................................................. 4, 10, 11

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)................................................................................................ 4, 12

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)............................................................................ 10, 12

*Intermetro Indus. Corp. v. Capsa Sols., LLC*,
  50 F. Supp. 3d 657 (M.D. Pa. 2014) ............................................................................ 6

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
  No. 17-cv-143, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017)............................................ 11

*iSource Loans, LLC v. SunTrust Mortg., Inc.*,
  No. 2:13-CV-521, 2014 WL 3730289 (E.D. Va. Mar. 10, 2014)........................................... 8

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
  No. 6:20-cv-318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)..................................... 8

*LiTL LLC v. Lenovo (U.S.), Inc.*,
  No. CV 20-689-RGA, 2022 WL 610739 (D. Del. Jan. 21, 2022) ........................................... 9

*Longhorn Auto. Grp. LLC v. Hyundai Motor Co.*,
  No. 2:24-CV-00554-JRG, 2025 WL 2778462 (E.D. Tex. Sept. 26, 2025) ............................ 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)............................................................................................... 15

*Neonode Smartphone LLC v. Samsung Elecs. Co.*,
  No. 6:20-CV-00507-ADA, 2023 WL 5426743 (W.D. Tex. June 27, 2023) ...................... 5, 14

*Network Sys. Techs. LLC v. Qualcomm, Inc.*,
  No. 1:22-cv-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023)............................. passim

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-cv-207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)............................. 5, 15

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................................... 4, 8

*Smith Interface Techs., LLC v. Apple Inc.*,
  No. 23-cv-1187, 2024 WL 6916566 (S.D. Cal. Aug. 5, 2024)............................................. 6

*SoftView LLC v. Apple Inc.*,
  No. CIV. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012)....................................... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Soverain IP, LLC v. Microsoft Corp.*,
No. 2:17-CV-00204-RWS-RSP, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018)...................... 9

*Valinge Innovation AB v. Halstead New Eng. Corp.*,
No. 16-1082-LPS-CJB, 2017 WL 5196379 (D. Del. Nov. 9, 2017) ........................................ 9

*Washington v. Caterpillar Inc.*,
No. 6:24-cv-310, 2025 WL 782305 (W.D. Tex. Mar. 3, 2025)................................................. 4

*Xiros, Ltd. v. DePuy Synthes Sales, Inc.*,
No. 21-cv-681-ADA, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022).................................... 7

## I.       INTRODUCTION

Plaintiff Network System Technologies, LLC's ("NST") allegations of pre-suit indirect and willful infringement should be dismissed because they plead no facts that could support Defendants, SK hynix Inc. and SK hynix America Inc. (collectively, "SK hynix"), having any knowledge of the asserted patents[1] before NST filed this case. Lacking such factual allegations, NST's Complaint relies on dubious conjectures about SK hynix's awareness of NST's prior litigations and cobbles together a series of irrelevant observations, such as citations to the asserted patents by other unrelated companies or the alleged fame of the patents' original assignee. NST's allegations not only fail to plausibly support pre-suit knowledge of the patents, but also fall short of establishing the other elements of pre-suit indirect and willful infringement, including that SK hynix had actual knowledge of its alleged infringement and specific intent to infringe.

This Court and others in this District have dismissed reliance on similar speculation to support allegations of pre-suit indirect and willful infringement—including in an earlier case that NST filed in this very District against Qualcomm. Indeed, NST's conclusory allegations here replicate those that it originally pleaded against Qualcomm, which Judge Ezra thoroughly rejected in granting Qualcomm's Rule 12(b)(6) motion. The same result should apply here.

## II.      FACTUAL BACKGROUND

NST's Complaint provides many paragraphs of scattered allegations purporting to support its pre-suit indirect and willful infringement claims for the asserted patents. But the length of NST's allegations fails to disguise their irrelevance and implausibility. Instead, their length represents NST's attempt to compensate for the utter absence of any plausible facts suggesting that

---

[1] The asserted patents are U.S. Patent Nos. 7,366,818; 7,373,449; 7,594,052; 7,613,849; 7,769,893; 8,072,893; and 8,086,800. The '449 and '052 patents were severed and stayed pending final resolution of NST's appeals regarding the outcome of *inter partes* review proceedings. *See* Text Order Granting Dkt. 27 Unopposed Motion to Sever (Dec. 19, 2025).

SK hynix had pre-suit knowledge of the patents or its allegedly infringing conduct. The totality of NST's allegations can be summarized as follows:

*First*, NST alleges that SK hynix had pre-suit knowledge of the asserted patents because NST previously sued other unrelated companies (*e.g.*, Qualcomm Corp., Texas Instruments Inc., and others). *See, e.g.*, Compl. ¶ 24. NST alleges that SK hynix was aware of these litigations because: (1) the defendants operate in the semiconductor industry, and SK hynix allegedly "monitors litigation" in that industry, *e.g.*, *id*. ¶¶ 24–25, 39, 54, 69, 99, 114, 129, 149, 162, 173, 184, 208, 218, 230; (2) SK hynix is allegedly an RPX member, and RPX published certain notices about these litigations, *e.g.*, *id.* ¶ 25; and (3) NST sued a company called Arteris in one of these litigations, and SK hynix allegedly has a business relationship with Arteris, *e.g.*, *id*. ¶ 24.

*Second*, NST alleges that the asserted patents are well known in the industry, because they were prosecuted by Koninklijke Philips N.V. ("Philips"), an allegedly well-known company whose patent prosecution activity SK hynix allegedly monitored. *See, e.g.*, *id.* ¶¶ 34–36, 49–51, 64–66, 79–81, 94–96, 109–11, 124–26.

*Third*, NST alleges that the seven asserted patents were cited during prosecution of patents filed by other unrelated companies, like Intel Corp., NEC Corp., and others. *See, e.g.*, *id.* ¶¶ 35, 50, 65, 80, 95, 110, 125. But NST does not allege that **SK hynix** ever cited to NST's patents during prosecution of any patents filed by SK hynix.

Notably, these allegations are identical to—and in some cases, even more bare than—the allegations that Judge Ezra dismissed in a prior NST litigation against Qualcomm where NST asserted six of the seven patents at issue in this case. *See Network Sys. Techs. LLC v. Qualcomm, Inc.*, No. 1:22-cv-01331, 2023 WL 11833572, at *6–7 (W.D. Tex. July 21, 2023). In that case, NST's original complaint presented the same allegations of pre-suit knowledge and conduct as it

2

does in this case, namely, arguments based on (1) the alleged fame of the patents in the semiconductor industry, *see* Complaint, *Network Sys. Techs. LLC v. Qualcomm, Inc.*, Dkt. 1 ("Qualcomm Complaint") (Dec. 19, 2022) ¶¶ 40, 69, 96, 121, 144, 160; (2) Philips' alleged prominence, *see id.* ¶¶ 27, 55, 85, 107, 138, 155; and (3) the alleged citation of the asserted patents during various companies' patent prosecution efforts, *see id.* ¶¶ 28, 56, 86, 108, 139. As detailed further in the Argument section, Judge Ezra determined that these identical allegations were insufficient to support NST's pre-suit indirect and willfulness claims, and dismissed almost all of them. *See Qualcomm*, 2023 WL 11833572, at *6–9.[2] The only pre-suit allegations that Judge Ezra did *not* dismiss were those premised on the fact that some of Qualcomm's own patents cited to certain of NST's asserted patents. Judge Ezra determined that these citations provided at least some plausibility for NST's allegations that Qualcomm had pre-suit knowledge of those cited patents. *See id.* at *9. But that fact is absent here: NST does not make any allegation that SK hynix has cited to any of NST's asserted patents.

## III.    LEGAL STANDARDS

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege a plausible cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Washington*

---

[2] After Judge Ezra dismissed portions of NST's original complaint, NST filed a first amended complaint, *see Qualcomm*, No. 1:22-cv-01331, Dkt. 57 (Aug. 7, 2023), and later a second amended complaint, *id.*, Dkt. 136 (July 22, 2024), adding allegations directed towards Qualcomm's purported pre-suit knowledge of the asserted patents. *See, e.g.*, Second Amended Complaint, Dkt. 136, ¶¶ 45–50 (identifying specific communications from Qualcomm officers regarding a patent portfolio including the then-asserted patents). These additional allegations were Qualcomm-specific, based on information learned during discovery, and substantially more targeted than those in NST's original complaint—which mirrors its original complaint in this case. Accordingly, to the extent NST may assert that Judge Ezra did not dismiss those later-filed, amended complaints against Qualcomm, that assertion would be irrelevant: those amended complaints contained Qualcomm-specific allegations far more detailed and supported than the allegations made here, and are also inapplicable to SK hynix.

*v. Caterpillar Inc.*, No. 6:24-cv-310, 2025 WL 782305, at *1 (W.D. Tex. Mar. 3, 2025). This requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations omitted). Conclusory allegations or "formulaic recitation of the elements of a cause of action will not do." *Id*. at 678 (quotations omitted). Accordingly, "[courts] do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also, e.g.*, *Aeritas, LLC v. Darden Corp.*, No. 6:20-cv-938-ADA, 2021 WL 4868430, at *2–3 (W.D. Tex. Oct. 18, 2021) (granting motion to dismiss complaint where allegations regarding venue were made only "on information and belief," explaining that "a plaintiff may not simply rely on legally conclusory statements").

This District splits indirect and willful infringement allegations into pre-suit and post-suit conduct. *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 778 n.2 (W.D. Tex. 2022). A claim for pre-suit contributory or induced infringement requires a plausible showing of (1) "knowledge of the patent in suit" and (2) "knowledge of patent infringement" before the suit was filed. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–68 (2011); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (a claim for contributory infringement requires showing the defendant "knew that the combination for which its components were especially made was both patented and infringing" (quotations omitted)).

A claim for pre-suit willful infringement requires a plaintiff to plausibly allege that, before the plaintiff filed its complaint, the defendant: (1) knew of the asserted patents; (2) knowingly induced the allegedly infringing acts; and (3) possessed the specific intent to encourage another's infringement. *Affinity Lab'ys of Tex., LLC v. Toyota Motor N. Am., Inc.*, No. W:13-CV-365, 2014 WL 2892285, at *7–8 (W.D. Tex. May 12, 2014); *see also, e.g.*, *Parity Networks, LLC*

4

*v. Cisco Sys., Inc.*, No. 6:19-cv-207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (to survive a motion to dismiss, a willful infringement claim must show that defendant knew its conduct was infringing).

Absent a sufficient showing of the first element alone—pre-suit knowledge of the asserted patents—a plaintiff's claims for pre-suit indirect or willful infringement are insufficient as a matter of law. *Advanced Coding Techs. LLC v. Google LLC*, 759 F. Supp. 3d 755 (E.D. Tex. 2024); *Neonode Smartphone LLC v. Samsung Elecs. Co.*, No. 6:20-CV-00507-ADA, 2023 WL 5426743, at *4 (W.D. Tex. June 27, 2023).

## IV.    ARGUMENT

As detailed below, NST's conclusory allegations in support of its pre-suit indirect and willful infringement claims do not rise to the level of plausibility.  NST does not plead facts plausibly supporting that SK hynix had knowledge of any asserted patent before NST filed its Complaint.  This failure alone is fatal to both claims.  Moreover, NST does not plausibly allege that SK hynix infringed any asserted patent with knowledge of infringement and the requisite specific intent, essential elements for both indirect and willful infringement claims.

### A.    NST Fails to Plausibly Allege Indirect Infringement

NST's indirect infringement claims should be dismissed because NST fails to plead that (1) SK hynix had pre-suit knowledge of any of the asserted patents; (2) SK hynix had actual knowledge that the accused pre-suit conduct was in fact infringing; and (3) SK hynix had the requisite affirmative intent to induce infringement before NST's Complaint was filed.

#### 1.    NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the Asserted Patents

Just as it did in *Qualcomm*, NST takes a kitchen-sink approach to alleging that SK hynix knew of the asserted patents before this suit was filed, offering a variety of speculative theories.

But as Judge Ezra found in *Qualcomm*, NST's scattershot allegations, even if considered together, fall far short of plausibly alleging that SK hynix actually had the required pre-suit knowledge.

*First*, NST alleges that SK hynix had notice of NST's previous litigations regarding the asserted patents because: (1) SK hynix allegedly monitored those litigations against SK hynix's competitors in the "tight-knit semiconductor industry," *e.g.*, Compl. ¶ 24; (2) SK hynix received notice of those litigations as a member of RPX, *e.g.*, *id.* ¶ 25; and (3) Arteris was one defendant in a prior litigation, and SK hynix allegedly is (or was) a licensee of Arteris.

As an initial matter, these allegations cannot possibly support SK hynix's pre-suit knowledge of the '849 patent, which was not part of any of NST's prior litigations.

For the remaining patents involved in those cases, NST's allegations are wholly insufficient to demonstrate SK hynix's pre-suit knowledge.  As this Court has explained, generalized allegations that the defendant monitored the plaintiff's prior lawsuits against the defendant's competitors do not plausibly suggest pre-suit knowledge of the asserted patents.  *Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 661 F. Supp. 3d 643, 651–52 (W.D. Tex. 2023) (Albright, J.); *see also, e.g.*, *Smith Interface Techs., LLC v. Apple Inc.*, No. 23-cv-1187, 2024 WL 6916566, at *6 (S.D. Cal. Aug. 5, 2024) ("[K]nowledge of prominent national litigation between the plaintiff and third-party competitors is insufficient to confer pre-suit knowledge."); *Intermetro Indus. Corp. v. Capsa Sols., LLC*, 50 F. Supp. 3d 657, 666 (M.D. Pa. 2014) (finding press releases and public news coverage of previous litigation insufficient to show plausibility of pre-suit knowledge of patents).  Indeed, in *Qualcomm*, Judge Ezra rejected NST's similar allegations, that defendants "monitored semiconductor patents" previously acquired by Philips, as insufficient to allege pre-suit knowledge.  2023 WL 11833572, at *6–7.

NST further speculates that SK hynix was aware of NST's pre-suit litigation activities

6

based on its alleged business relationships with RPX and Arteris, the existence and nature of which are supported *only* by NST's "information and belief." *See, e.g.*, Compl. ¶¶ 24, 25. While NST may contend that these allegations were not in its original, dismissed *Qualcomm* complaint, these allegations are equally conclusory and insufficient. For example, despite asserting that Arteris "notified customers and licensees" of NST's prior litigation against Arteris, *id.* ¶ 24, NST does not identify *any* specific alleged communication between Arteris and SK hynix—even after having obtained discovery from Arteris as part of the prior litigation between those parties. Likewise, NST's allegations regarding RPX cite only to various publicly available RPX webpages and articles referencing NST's litigation efforts against Qualcomm, Texas Instruments, and others. *Id.* ¶ 25. There is, again, not even an allegation of any specific communication between RPX and SK hynix in which RPX gave SK hynix notice of NST's patents. *See, e.g.*, *Aeritas*, 2021 WL 4868430, at *2–3 (finding venue allegations resting on a joint-enterprise theory, made "on information and belief" across thirteen paragraphs in the complaint, insufficient to survive a motion to dismiss because the court need not accept as true unwarranted factual inferences).

None of NST's nonspecific allegations and public documents justify imputing any alleged knowledge from RPX and Arteris to SK hynix. Indeed, this District has consistently rejected imputing knowledge, even between affiliated companies, absent specific justification. *See, e.g.*, *Flypsi, Inc. v. Google LLC*, No. 6:22-cv-31-ADA, 2022 WL 3593053, at *14 (W.D. Tex. Aug. 22, 2022) (refusing to impute knowledge of Google Ventures to its affiliate Google); *Xiros, Ltd. v. DePuy Synthes Sales, Inc.*, No. 21-cv-681-ADA, 2022 WL 3592449, at *3 (W.D. Tex. Aug. 22, 2022) (a parent corporation's pre-suit knowledge is not necessarily imputed to a subsidiary where no specific allegations support doing so). Here, Arteris and RPX are unrelated and unaffiliated with SK hynix, rendering NST's attempt to impute knowledge even more implausible.

To the extent NST cites out-of-district cases such as *iSource Loans* and *SoftView LLC* to support an argument that a defendant's pre-suit knowledge of the asserted patents can in certain circumstances be inferred from its communications with third parties, those circumstances are not present here.  In *iSource Loans, LLC v. SunTrust Mortgage, Inc.*, pre-suit knowledge allegations survived a motion to dismiss where the plaintiff alleged that, before its complaint was filed, the patent's original assignee had previously notified the defendant that it may be infringing. No. 2:13-CV-521, 2014 WL 3730289, at \*4 (E.D. Va. Mar. 10, 2014).  NST does not (indeed, it cannot) make any such allegation here.  In *SoftView LLC v. Apple Inc.*, the plaintiff did not solely rely on the defendant's membership in RPX to support its pre-suit knowledge; rather, the plaintiff also included extensive, undisputed allegations that RPX had actually entered into negotiations with the plaintiff regarding the asserted patents, and that RPX subsequently specifically notified the defendant of those patents.  No. CIV. 10-389-LPS, 2012 WL 3061027, at \*6–7 (D. Del. July 26, 2012).  NST's RPX-related allegations fall far short of those in *SoftView*, as NST does not attempt to allege the existence of any specific communications between it and RPX or between RPX and SK hynix.  Put simply, NST's speculative allegations regarding SK hynix's communications with third parties are exactly the type of insufficient "conclusory allegations [and] unwarranted factual inferences" that this Court need not accept as true.  *Plotkin*, 407 F.3d at 696.

*Second*, NST makes sweeping assertions that the asserted patents were well known because they were prosecuted by Philips.  *See, e.g.*, Compl. ¶ 39.  But even general allegations that a defendant had knowledge of another company's patent portfolio are considered insufficient to plausibly allege knowledge of a particular patent.  *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, No. 6:20-cv-318-ADA, 2021 WL 4555802, at \*2 (W.D. Tex. Oct. 4, 2021); *see also, e.g.*, *Valinge Innovation AB v. Halstead New Eng. Corp.*, No. 16-1082-LPS-CJB, 2017 WL

5196379, at *3 (D. Del. Nov. 9, 2017) (collecting cases explaining that allegations that the asserted patent is well known in the semiconductor industry are insufficient to demonstrate pre-suit knowledge). Here, NST does not even allege that SK hynix had knowledge of Philips' patents generally. Instead, NST merely proclaims without any support that the patents were "well known" in the industry, without any reference to SK hynix. As Judge Ezra explained in *Qualcomm* when rejecting these same allegations from NST, "allegations of pre-suit knowledge based solely on a defendant's involvement in the same market fail to pass muster, even on a motion to dismiss." 2023 WL 11833572, at *6 (collecting cases). Accordingly, NST's broad allegations of assumed industry-wide knowledge fail to plausibly support SK hynix's pre-suit knowledge.

*Third and finally*, NST alleges that SK hynix had pre-suit awareness of the asserted patents because a handful of unrelated nonparties (Intel Corp., Arm Ltd., NEC Corp., IBM Corp., and others) cited the asserted patents during prosecution of their own patents. *See, e.g.*, Compl. ¶¶ 35, 50, 65, 80, 95, 110, 125. Notably, NST does *not* allege that **SK hynix** has ever actually cited any of NST's asserted patents during prosecution of SK hynix's own patents. *See, e.g.*, *id.* ¶ 35. Allegations that unrelated companies cited certain of the asserted patents during prosecution do not fill that void. *See, e.g.*, *Soverain IP, LLC v. Microsoft Corp.*, No. 2:17-CV-00204-RWS-RSP, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018) (allegations that a patent was frequently cited by others in the industry are insufficient on their own to plausibly plead pre-suit knowledge); *see also LiTL LLC v. Lenovo (U.S.), Inc.*, No. CV 20-689-RGA, 2022 WL 610739, at *8 (D. Del. Jan. 21, 2022) (dismissing pre-suit knowledge claims for patents which defendant never cited, despite allegations that other applications in the patents' families were frequently cited by others in the industry); *cf. Flypsi*, 2022 WL 3593053, at *5 ("[K]nowledge of patent applications generally without more is insufficient to satisfy the knowledge requirement."). Indeed, in

9

*Qualcomm*, Judge Ezra explained that nearly identical allegations from NST were insufficient to establish pre-suit knowledge, and thus dismissed NST's pre-suit knowledge claims for patents that the defendants themselves had never cited during prosecution.  2023 WL 11833572, at *6–9.

Accordingly, even considering NST's various conclusory allegations in their totality, NST pleads no plausible basis upon which to find that SK hynix had pre-suit knowledge of the asserted patents.  Its pre-suit indirect infringement (including induced and contributory infringement) claims must therefore be dismissed.

### 2.    NST Also Does Not Plausibly Allege That SK hynix Had the Requisite Knowledge for Either Contributory or Induced Infringement

Because NST has not plausibly alleged SK hynix's pre-suit knowledge of the asserted patents, the Court need not go further to consider the other elements of pre-suit indirect infringement.  *Advanced Coding Techs.*, 759 F. Supp. 3d at 758.  To the extent the Court continues its inquiry, NST also fails to plausibly allege the other elements of those claims.

Plausibly alleging a contributory infringement claim also requires that SK hynix had the requisite knowledge, *i.e.*, "knew that the combination for which its components were especially made was both patented and infringing."  *Fujitsu*, 620 F.3d at 1326, 1330 (quotations omitted).  And to plausibly allege an induced infringement claim, NST must plead facts supporting that SK hynix "specifically intended" a third party to directly infringe the asserted patents.  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  In other words, NST must plausibly plead that SK hynix had "an affirmative intent to cause direct infringement."  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  NST does neither.

### a.    NST does not adequately plead its pre-suit contributory infringement claim

Even if NST's allegations plausibly support that SK hynix had pre-suit knowledge of

10

NST's asserted patents, they still do not support that SK hynix had *pre-suit knowledge of its alleged infringement*, which is a requirement of NST's indirect infringement claims. None of NST's prior litigations targeted SK hynix's products, and NST does not allege that it sent any pre-suit notice letters or the like to SK hynix. In other words, NST does not allege that it "affirmative[ly] communicat[ed] [] a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186–87 (Fed. Cir. 1994) (explaining requirements for actual notice). NST's allegations thus fall far short of showing that SK hynix knew that the now-accused products were "both patented and infringing" before NST filed its lawsuit. *Fujitsu*, 620 F.3d at 1326.

NST's allegations for contributory infringement are also devoid of factual allegations. Instead, NST parrots the legal requirements for contributory infringement, and then vaguely references SK hynix's "informational and promotional materials" and the "design, configuration, and functionality of the Accused Products," with no further elaboration. *See, e.g.*, Compl. ¶¶ 159, 170, 181, 193, 205, 227. For each asserted patent, NST repeats the same allegation that SK hynix "had actual knowledge of the [] patent and infringement of the [] patent by [SK hynix] and/or their customers or end users, or were willfully blind to such infringement, before the date of this Complaint and the expiration date of the [] patent." *Id.* ¶¶ 24, 25, 40, 55, 70, 85, 100, 115, 130, 149, 152, 162, 173, 184, 196, 208, 218, 230. This repeated, single sentence is the sum total of NST's allegations as to SK hynix's pre-suit knowledge of infringement. And NST makes no meaningful allegation, as is required for a contributory infringement claim, that the accused products were "especially made" for an infringing use. *Fujitsu*, 620 F.3d at 1326.

These allegations are facially insufficient under Rule 12. *See, e.g.*, *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 17-cv-143, 2017 WL 9477677, at *7 (W.D. Tex. Nov. 28, 2017)

11

(dismissing "factually threadbare" claim for contributory infringement).  Here again, Judge Ezra dismissed NST's ***identical*** pre-suit contributory infringement allegations in *Qualcomm*.  2023 WL 11833572, at *13 ("The Complaint merely states that Defendants contributorily infringe the asserted patents 'by selling or offering to sell [Defendants'] Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the Asserted Patents and not a staple article or commodity of commerce suitable for substantial non-infringing use.'").  Similarly here, NST's claims for pre-suit contributory infringement should be dismissed.

> **b.    NST does not adequately plead its pre-suit induced infringement claim**

NST's failure to plausibly plead SK hynix's pre-suit knowledge of infringement similarly dooms its allegations of induced infringement, as inducement also requires such knowledge.  *E.g.*, *Global-Tech*, 563 U.S. at 766–68.  Additionally, inducement requires specific, affirmative intent to induce infringement of the asserted patents before NST filed its complaint.  *In re Bill of Lading*, 681 F.3d at 1339.  Yet, in support of its inducement claims, NST points merely to (1) instructions and guides for the accused products, *e.g.*, Compl. ¶ 146; (2) snippets from SK hynix's website announcing news on upcoming products, *e.g.*, *id.* ¶ 141; and (3) claim charts referencing screenshots of the website, supported by citations to a textbook entirely unaffiliated with SK hynix, *e.g.*, *id.*, Ex. 8.  None of these generalized allegations, even taken together, come close to pleading a plausible claim for induced infringement.

For example, NST alleges that before the Complaint was filed, SK hynix published instructions and guides regarding how to operate, incorporate, and use the accused products, including providing customer support services, *e.g.*, *id.* ¶ 146, and participated in industry conferences to promote its products, *e.g.*, *id.* ¶ 147.  But courts in this District and others have dismissed similar allegations, *e.g.*, that a defendant was "advertising and promoting the use of the

Accused Instrumentality in an infringing manner" or "distributing instructions that guide users to use the Accused Instrumentality in an infringing manner," particularly where those allegations lacked any specifics about how the defendant actually knew the instructed uses were infringing. *Affinity Lab'ys of Tex.*, 2014 WL 2892285, at *7–8; *see also, e.g.*, *Longhorn Auto. Grp. LLC v. Hyundai Motor Co.*, No. 2:24-CV-00554-JRG, 2025 WL 2778462, at *1 (E.D. Tex. Sept. 26, 2025) (finding similar allegations insufficient). Consistent with these precedents, Judge Ezra dismissed NST's identical allegations in *Qualcomm*, explaining that NST had not adequately shown Qualcomm's specific intent merely because it allegedly "publish[ed] and distribut[ed] data sheets, manuals, and guides for the Qualcomm Accused Products." 2023 WL 11833572, at *11.

Similarly, NST alleges that SK hynix's website includes a "Sales Kit" page with "news on *upcoming* SK hynix products and the latest materials on product strengths." *E.g.*, Compl. ¶ 146 (emphasis added). NST makes no effort to allege why SK hynix's provision of information on various *future* products somehow means it has the specific intent to infringe the asserted patents. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) ("[F]ailing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the [instructive materials] direct customers to use those products in an infringing manner, falls short."). Again, Judge Ezra dismissed NST's identical allegations in *Qualcomm* after finding that NST's allegations of specific intent could not be plausibly inferred from screenshots of product specifications from Qualcomm's website. 2023 WL 11833572, at *11–12 n.9. Accordingly, NST's allegations here against SK hynix are also insufficient to allege actual intent to infringe.

Finally, NST's Complaint attaches claim charts that include screenshots of SK hynix's website, supported by repeated references to a *Networks-on-Chips: Theory and Practice* **textbook**

13

that SK hynix had no part in authoring or distributing.  *See, e.g.*, Compl., Ex. 8 at 19.  NST makes no effort to explain how a textbook—which does not even reference the accused products—demonstrates that SK hynix had pre-suit specific intent to infringe the asserted patents.  As with NST's vague allegations related to SK hynix's instructions and guides, the claim charts' screenshots and citations to the textbook do not include any SK hynix "instruction, direction or encouragement that would reasonably support" an inference of specific intent.  *Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, No. CV 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018).  Judge Ezra accordingly dismissed materially identical allegations in *Qualcomm*, because NST's claim charts displaying pictures from Qualcomm's website failed to show any "instruction, direction, or encouragement that would reasonably support such an inference of specific intent."  2023 WL 11833572, at *11–12, n.9 (quotations omitted).

In sum, because NST has not plausibly pleaded any of the three elements of a pre-suit indirect infringement claim against SK hynix, NST's indirect infringement claims must be dismissed.

### B.    NST Does Not Plausibly Allege Pre-suit Willful Infringement

#### 1.    NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the Asserted Patents

Just as for its pre-suit indirect infringement claims, NST's claim for pre-suit willful infringement cannot survive a motion to dismiss absent NST adequately pleading that SK hynix had pre-suit knowledge of the asserted patents.  *Neonode Smartphone LLC*, 2023 WL 5426743, at *4.  As explained in Section IV.A.1 *supra*, NST has not done so.  This failure alone is fatal to NST's pre-suit willful infringement claim.

#### 2.    NST Fails to Plausibly Allege SK hynix Had the Requisite Knowledge of Infringement

NST also fails to plausibly plead the other required elements of a willfulness claim—that

14

SK hynix knowingly and intentionally infringed the asserted patents before NST filed its Complaint. *Parity*, 2019 WL 3940952, at *3; *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (willful infringement requires a showing of "[e]vidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, [which] show an affirmative intent that the product be used to infringe"). To address these elements, NST must adequately plead facts sufficient to support that SK hynix's pre-suit infringement was deliberate. *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-97, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016)) (dismissing claim for willful infringement because the complaint did "not allege any culpable conduct or any set of facts supporting an inference of culpable conduct").

Here, NST does not allege any facts suggesting that SK hynix engaged in any such deliberate conduct. Instead, NST simply repeats boilerplate allegations for each asserted patent that SK hynix "willfully, deliberately, and intentionally infringed," based only on NST's assertions of pre-suit knowledge of the asserted patents, which are implausible and insufficient as discussed in Section IV.A.1 above. *See, e.g.*, Compl. ¶¶ 162, 173, 184, 196, 208, 218, 230; *see also, e.g.*, *Aeritas*, 2021 WL 4868430, at *2 ("[A] plaintiff may not simply rely on legally conclusory statements to survive a motion to dismiss.").

Further, as explained above, NST fails to allege any basis for SK hynix's pre-suit knowledge of ***infringement***, let alone knowledge of the asserted patents. For example, NST does not claim to have sent any pre-suit communications with SK hynix containing specific, detailed charges of infringement. *See Amsted*, 24 F.3d at 186–87 ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). In *BillJCo*, for example, this Court found notice insufficient to support a willfulness claim even where

15

the plaintiff sent infringement notice letters to the defendant, because the letters did not "identif[y] products accused of infringement." 583 F. Supp. 3d at 776–77. And in *Atlas Global Technologies, LLC v. Sercomm Corp.*, this Court found the complaint failed to plausibly support an allegation of pre-suit willful infringement even where the plaintiff sent a pre-suit letter regarding its portfolio of patents and ten follow-up emails referencing the portfolio. 638 F. Supp. 3d 721, 728 (W.D. Tex. 2022). For similar reasons, in *Qualcomm*, Judge Ezra dismissed as insufficient NST's identical pre-suit willfulness claims. 2023 WL 11833572, at *14–15. Accordingly, because NST's conclusory, nonspecific allegations fall far short of showing that SK hynix had the requisite pre-suit knowledge of infringement, NST's pre-suit willful infringement claims should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss NST's pre-suit indirect and willful infringement claims.[3]

---

[3] In this motion, SK hynix is not seeking to dismiss the post-suit portions of NST's indirect and willful infringement claims, but reserves the right to challenge those claims at an appropriate time.

Dated:  February 23, 2026

Respectfully submitted,

*/s/ Timothy S. Durst*
Timothy S. Durst (Tex. Bar #00786924)
Jeff Baxter (Tex. Bar #24006816)
Frances Mackay (*pro hac vice pending*)
Tex. Bar #24109494
tdurst@omm.com
jbaxter@omm.com
fmackay@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone: (972) 360-1900

Ryan Yagura (Tex. Bar #24075933)
Brian Cook (*pro hac vice pending*)
ryagura@omm.com
bcook@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

Mark Liang (*pro hac vice*)
Eric Ong (*pro hac vice pending*)
mliang@omm.com
eong@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Brooke M. Wilner (*pro hac vice pending*)
Jacob Boesch (*pro hac vice pending*)
brookewilner@omm.com
jboesch@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, DC 20006
Telephone: (202) 383-5300

17

Matthew A. Gerges (*pro hac vice pending*)
mgerges@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 823-6900

Darryl J. Adams
dadams@sgbfirm.com
**SLAYDEN GRUBERT BEARD**
401 Congress Avenue, Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550

*Counsel for Defendants SK hynix Inc. and
SK hynix America Inc.*

18

## CERTIFICATE OF SERVICE

Service of this document was effected by the Western District of Texas' ECF system as of the date of filing, February 23, 2026.  All counsel of record have consented to such service.

*/s/ Timothy S. Durst*
Timothy S. Durst

## CERTIFICATE OF CONFERENCE

On November 20, 2025, I sent a letter to Plaintiff's counsel requesting that Plaintiff dismiss its pre-suit willful and indirect infringement claims, with leave to replead those allegations pursuant to OGP § VII.  The parties met and conferred on December 8, 2025 by videoconference and again by email on December 11 to December 17, 2025 but were unable to reach agreement.

*/s/ Mark Liang*
Mark Liang

19