**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:25-CV-1647-ADA |
| SK HYNIX INC.; SK HYNIX AMERICA INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**NETWORK SYSTEM TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO PARTIAL MOTION TO DISMISS BY DEFENDANTS SK HYNIX INC. AND SK HYNIX AMERICA INC.**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 2

III.  LEGAL STANDARD ........................................................................................... 5

IV.   ARGUMENT ......................................................................................................... 5

      A.    NST Sufficiently Pled Pre-Suit Induced Infringement ........................................... 6

          1.    NST Sufficiently Pled Pre-Suit Knowledge of the Asserted Patents and Infringement Thereof .................................................................................. 6

          2.    NST Sufficiently Pled Pre-Suit Knowing Inducement of the Infringing Acts ............................................................................................... 11

          3.    NST Sufficiently Pled Defendants Had Pre-Suit Specific Intent to Encourage Infringement of the Asserted Patents Prior to the Suit............ 13

      B.    NST Sufficiently Pled Pre-Suit Contributory Infringement ................................ 14

      C.    NST Sufficiently Pled Pre-Suit Willful Infringement ......................................... 16

      D.    If Any Deficiency Is Found, NST's Allegations Should Be Dismissed Without Prejudice Pursuant to Section VII of the OGP ........................................ 16

V.    CONCLUSION ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................5, 6

*Atlas Glob. Techs., LLC v. Sercomm Corp.*,
638 F. Supp. 3d 721 (W.D. Tex. 2022)..............................................................16, 17

*Billjco, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022)........................................................12, 15, 17

*Erickson v. Pardus*,
551 U.S. 89 (2007)...................................................................................................5

*Hafeman v. LG Elecs. Inc.*,
No. 6:21-CV-00696-ADA-DTG,
2022 WL 3723304 (W.D. Tex. Aug. 28, 2022)........................................................5

*Info-Hold, Inc. v. Muzak LLC*,
783 F.3d 1365 (Fed. Cir. 2015)..............................................................................11

*InterMetro Indus. Corp. v. Capsa Sols., LLC*,
50 F. Supp. 3d 657 (M.D. Pa. 2014).......................................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)................................................................................5

*Motiva Patents, LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)....................................................................11

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ................................................................................17

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)................................................................................5

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023)........................... *passim*

*Parity Networks, LLC v. Cisco Sys., Inc.*,
6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)....................................16

*Potter Voice Technologies LLC v. Apple, Inc.*,
Civil Action No. 12-cv-01096-REB-CBS, 2013 WL 1325040 (D. Colo. 2013)....................12

*Radiant Vision Sys., LLC v. Admesy B.V.*,
   Civil Action No. 1:21-CV-01115-DAE, 2022 WL 22869782 (W.D. Tex. Nov.
   9, 2022) ................................................................................................................6

*Saunders v. Equifax Info. Servs. LLC*,
   No. 16-CV-00525-LY, 2017 WL 3940942 (W.D. Tex. Aug. 3, 2017) .....................................5

*Smith Interface Techs., LLC v. Apple Inc.*,
   No. 23-cv-1187, 2024 WL 6916566 (S.D. Cal. Aug. 5, 2024)...................................................9

*SoftView LLC v. Apple Inc.*,
   No. 10-389-LPS, 2012 WL 3061027 (D. Del. Jul. 26, 2012)...................................................8

*Suprema, Inc. v. Int'l Trade Comm'n*,
   626 Fed. Appx. 273 (Fed. Cir. 2015).................................................................................11, 12

*Textile Computer Sys., Inc. v. Broadway Nat'l Bank*,
   620 F. Supp. 3d 557 (W.D. Tex. 2022)...................................................................................17

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
   No. 10-C-715, 2011 WL 3946581 (N.D. Ill. Sep. 2, 2011) .....................................................10

## I.    INTRODUCTION

Defendants' suggestion that NST's pre-suit indirect and willful infringement allegations should be dismissed simply because "NST's conclusory allegations here replicate those that it originally pleaded against Qualcomm, which Judge Ezra thoroughly rejected in granting Qualcomm's Rule 12(b)(6) motion," is without merit. First, the allegations that NST makes against Defendants here are different from, and more detailed than, the allegations initially dismissed by Judge Ezra in *Network Sys. Techs. LLC v. Qualcomm, Inc.*, 1:22-cv-01331-ADA (hereinafter, the "*Qualcomm* Case"). Second, Defendants ignore that NST's *amended* allegations, which more closely mirror the depth and detail of the allegations that NST makes here, were *not* dismissed and remain part of that case, now presided over by Judge Albright.

Defendants' Motion to Dismiss, (Dkt. 28, hereinafter, "Motion"), rests on a piecemeal recitation of NST's allegations that ignores well-settled precedent that a complaint must be viewed in its entirety. Rather than address the full constellation of facts alleged in NST's Complaint— including (1) Defendants' licensing and use of the very Arteris interconnect technology accused in NST's 2022 litigations, (2) communications from RPX and Arteris notifying Defendants of the Asserted Patents and NST's allegations of infringement against the very Arteris interconnect technology employed in Defendants' accused products, and (3) the pervasive industry recognition of Philips' NoC and processor-architecture innovations—Defendants seek to isolate individual allegations and dismiss them one by one. This improperly invites the Court to ignore the cumulative force of NST's detailed factual allegations, each of which reinforces the plausibility of Defendants' pre-suit knowledge, willful blindness, and indirect and willful infringement. When viewed collectively, the detailed allegations in NST's Complaint here, when accepted as true, establish that NST has sufficiently pled pre-suit indirect and willful infringement and Defendants' Motion should therefore be denied.

1

## II.    FACTUAL BACKGROUND

NST filed its complaint on October 14, 2025 (Dkt. 1 ("Complaint")) alleging infringement by SK hynix Inc. and SK hynix America Inc. ("Defendants") of seven patents: U.S. Patent Nos. 7,366,818 ("'818 patent"), 7,373,449 ("'449 patent"), 7,594,052 ("'052 patent"), 7,613,849 ("'849 patent"), 7,769,893 ("'9893 patent"), 8,072,893 ("'2893 patent"), 8,086,800 ("'800 patent"), (collectively, the "Asserted Patents").[1] Complaint ¶ 1. The Asserted Patents are all directed to Network on Chip ("NoC") technology and relate to "fundamental innovations in SoCs, including how the multitude of processors, memories, and other functional units residing on an SoC are interconnected and communicate with each other." *Id.* ¶ 134. The Asserted Patents were the result of extensive research and development by Philips Semiconductors, a subsidiary of Koninklijke Philips N.V. ("Philips"). *Id.* ¶ 22. Prior to being spun off in 2006 as NXP Semiconductors N.V. ("NXP"), Philips Semiconductors was one of the largest semiconductor companies in the world. *Id.* The Asserted Patents predate the NXP spin-off and were retained by Philips until all right, title, and interest in the Asserted Patents were transferred and assigned to NST in 2022. *Id.*

This Court is familiar with NST and its NoC patents insofar as NST filed its first case, the *Qualcomm* Case, asserting the '818, '449, '052, '9893, '2893, and '800 Patents (collectively, the "Enforced Patents") here in December of 2022. Over the past three years, the Court has presided over the full spectrum of patent case issues, including ruling upon two prior motions seeking to dismiss NST's allegations of pre-suit knowledge against Qualcomm, dismissing those allegations as stated in NST's original complaint there (*Qualcomm* Case, Dkt. 54), and then declining to dismiss a more detailed recitation of those re-pled allegations embodied in NST's first and second amended complaints (*Qualcomm* Case, Dkt. 182 at 11).

---

[1] Defendants' unopposed motion to sever and stay all claims related to the '449 and '052 Patents (Dkt. 27) was granted by the Court on December 19, 2025.

NST's infringement allegations, including those in the *Qualcomm* Case and those in separate actions NST filed against other defendants in the Eastern District of Texas in December 2022 (collectively with the *Qualcomm* Case, "NST's 2022 Litigations"), as well as its allegations against Defendants here, all turn on the same underlying issues: the accused products incorporate NoC technology that Arteris developed and supplied to these various defendant companies. *See* Complaint ¶¶ 24, 135–136. Arteris itself was a co-defendant in the *Qualcomm* Case until it settled with NST. *Id.* ¶ 24.

Given that Arteris' NoC technology was the root cause of infringement by Arteris and the various Arteris clients named as defendants in NST's 2022 Litigations, NST plausibly alleges here that Arteris notified its other clients, including Defendants, of NST's infringement allegations based on the NoC technology it provides them. *Id.* And, if that were not enough, NST also plausibly alleges (with supporting citations) that Defendants were additionally made aware of NST's infringement allegations against the Arteris NoC technology incorporated in Defendants' products by RPX Corporation, who provided detailed information regarding those very allegations to its members, including Defendants. *Id.* ¶ 25.

As additional bases for Defendants' pre-suit knowledge of the Asserted Patents, NST points to the fame in the semiconductor industry (of which Defendants are a part) of Philips Semiconductors, Philips' notorious SoC interconnect research, its patent portfolio generally, and the Asserted Patents specifically. Complaint ¶¶ 34, 36, 39, 49, 51, 54, 64, 66, 69, 79, 81, 84, 94, 96, 99, 109,111, 114, 124, 126, 129. NST alleges that the Asserted Patents were ubiquitous in the industry, from around their respective dates of issue forward, and were cited during the prosecution of numerous patent applications in the industry. *Id.* ¶¶ 35, 50, 65, 80, 95, 110, 125. For example, the '818, '449, and '9893 patents have been cited during prosecution of approximately 85 patent

applications assigned to industry leaders such as Intel Corporation and IBM Corporation. *Id.* ¶¶ 35, 50, 95. Likewise, the '849 and '2893 patents have been cited during prosecution of approximately 13 and 14 patent applications, respectively, assigned to industry leaders such as Intel Corporation and IBM Corporation. *Id.* ¶¶ 80, 110. Therefore, and as the Complaint alleges, the Defendants monitored Philips' patenting activity generally and, more specifically, were aware of the Asserted Patents and their applicability to Defendants' products. *Id.* ¶¶ 36–37, 51–52, 66–67, 81–82, 96–97, 111–112, 126–127.

Despite these allegations supporting Defendants' pre-suit knowledge and intent to infringe the Asserted Patents, Defendants contacted NST on November 20, 2025, requesting that NST withdraw its "pre-suit willful and indirect infringement claims." Ex. A (M. Liang Ltr.) at 1, 3–4. The parties met and conferred on December 8, 2025, to discuss dismissing NST's allegations, with leave to "re-plead those allegations within three months after fact discovery opens," pursuant to Section VII of this Court's OGP.[2] Following the meet and confer, NST emailed Defendants on December 15, 2025, agreeing to dismiss its allegations of pre-suit knowledge on the condition that fact discovery related to these allegations be inclusive of email discovery because evidence in support of many of NST's allegations of pre-suit knowledge are likely to be found in emails (*e.g.*, communications from Arteris and/or RPX), and additional evidence of pre-suit knowledge in related cases were also discovered through e-mail discovery. *See* Ex. B (e-mail chain regarding OGP § VII) at 1–2; *see also Qualcomm* Case, Dkt. 183 ¶¶ 45–51 (W.D. Tex. Sep. 11, 2024) (discussing 2013–2014 e-mail communications between Governing Dynamics and Qualcomm

---

[2] W.D. Tex. S.O. (OGP) § VII, https://www.txwd.uscourts.gov/wp-content/uploads/2025/03/ADA-Standing-Order-Governing-Proceedings-Patent-Cases-ATX_3.5.25.pdf.

regarding the potential sale of a portfolio of patents, including the Asserted Patents, to Qualcomm). Defendants rejected NST's offer on December 17, 2025, and filed the present Motion. Ex. B at 1.

## III.    LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) generally requires only a plausible short and plain statement of the plaintiff's claim, showing that the plaintiff is entitled to relief." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) (internal quotations omitted). A motion to dismiss under FED. R. CIV. P. 12(b)(6) should be denied if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true." *Saunders v. Equifax Info. Servs. LLC*, No. 16-CV-00525-LY, 2017 WL 3940942, at *2 (W.D. Tex. Aug. 3, 2017). "There is no requirement for [plaintiff] to 'prove its case at the pleading stage.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

## IV.    ARGUMENT

The sufficiency of the allegations of NST's Complaint must be "taken as a whole, and construed in the light most favorable to [NST]." *Hafeman v. LG Elecs. Inc.*, No. 6:21-CV-00696-ADA-DTG, 2022 WL 3723304, at *3 (W.D. Tex. Aug. 28, 2022). Rather than address the sufficiency of NST's allegations as a whole, Defendants focus on discrete sub-portions of NST's allegations and attack those sub-portions in isolation by relying on cases that purportedly found

similar allegations, in isolation, to be insufficient. This piecemeal approach is inappropriate and should be rejected. When NST's allegations are considered as a whole, NST's allegations more than sufficiently "state a claim to relief that is plausible on its face," *Ashcroft*, 556 U.S. at 678 (quotation omitted), and Defendants' Motion should be denied.

### A.    NST Sufficiently Pled Pre-Suit Induced Infringement

"To state a claim for induced patent infringement under § 271(b), the complaint must plausibly plead that the defendant (1) knew of the patent; (2) knowingly induced the infringing acts, and (3) possessed a specific intent to encourage another's infringement of the patent." *Radiant Vision Sys., LLC v. Admesy B.V.*, Civil Action No. 1:21-CV-01115-DAE, 2022 WL 22869782, at *4 (W.D. Tex. Nov. 9, 2022). NST addresses each of these elements in turn.

### 1.    NST Sufficiently Pled Pre-Suit Knowledge of the Asserted Patents and Infringement Thereof

Defendants assert that NST's allegations "plead no facts that could support Defendants . . . having any knowledge of the asserted patents." Motion at 1. Defendants further suggest that NST's allegations should be dismissed because Judge Ezra "dismissed reliance on similar speculation to support allegations of pre-suit indirect and willful infringement—including in [the *Qualcomm* Case]." *Id.* But this argument ignores critical differences between NST's initial allegations against Qualcomm and those against Defendants here.

Unlike NST's original complaint against Qualcomm, NST currently alleges Defendants' pre-suit knowledge of the Enforced Patents based on, *inter alia*, NST's 2022 Litigations against Arteris and licensees of Arteris' interconnect technology. Complaint ¶ 24. In NST's 2022 Litigations, NST alleged infringement of the Enforced Patents based on the same Arteris interconnect technology that Defendants use and incorporate into the Accused Products. *Id.* ("Defendants license (or at least previously licensed) the Arteris interconnect technology that is

accused in and forms the basis of [NST's 2022 Litigations], and Defendants' Accused Products include that licensed Arteris interconnect technology and/or a derivative thereof"). NST plausibly alleges that Arteris notified Defendants of NST's allegations against implementers of Arteris NoC technology because Defendants are likewise implementers of the infringing Arteris NoC technology. *Id.* ("Arteris notified customers and licensees, including Defendants, of [NST's 2022 Litigations] against Arteris and Arteris's customers for infringement based on Arteris interconnect technology that is included in Defendants' Accused Products").

Additionally, NST alleges that Defendants are members of RPX and were notified of NST's 2022 Litigations by RPX. *Id.* ¶ 25. In support of this allegation, NST cited a specific news article published by RPX on December 30, 2022 that RPX distributed to its members (including the Defendants). *Id.* This article informed them of NST's 2022 Litigations, identified the defendants and the accused technology, and provided links for each of NST's 2022 Litigations, where Defendants were able to access the complaints—and hundreds of pages of detailed claim charts— mapping each of the Enforced Patents to the very Arteris interconnect technology used by the Defendants. *Id.* NST's Complaint also identified an RPX news article published on April 18, 2023 discussing NST's 2022 Litigations, and including similar information related to the Enforced Patents and accused technologies. *Id.* As a result of these communications from Arteris and RPX, NST plausibly alleges that Defendants had knowledge of the Enforced Patents at least as early as December 19, 2022, and Defendants do not deny this allegation in their Motion. *Id.* ¶¶ 24–25.

NST's allegations that Arteris notified Defendants are, alone, sufficient to plead Defendants' pre-suit knowledge of the Enforced Patents and their infringement thereof. For example, in *iSource Loans, LLC v. SunTrust Mortg., Inc.*, allegations that a non-party informed the defendant of patents that the defendant was later accused of infringing—similar to those made by

NST here—were found sufficient to plead pre-suit knowledge of those patents and infringement thereof. No. 2:13-CV-521, 2014 WL 3730289, at *3-4 (E.D. Va. Mar. 10, 2014) (finding general allegations that defendant was previously notified by a third party of the asserted patents were "sufficient to create a plausible inference that [defendant] knew that [it] infringed those patents" and denying motion to dismiss induced infringement claims).[3] In *Core Optical Techs., LLC v. Juniper Networks Inc.*, allegations—similar to NST's—that the defendant had a relationship to a non-party who was accused of infringing patents in an earlier case involving "the same patent in a tight-knit industry" were found to "plausibly suggest pre-suit knowledge." 562 F. Supp. 3d 376, 381 (N.D. Cal. 2021) (finding that "three prior lawsuits concerning the same patent in a tight-knit industry" coupled with plaintiff's allegations related to defendant's "connection to a [third] party known to have disclosed the [asserted] patent's existence to others . . . plausibly suggest pre-suit knowledge"). Therefore, NST's allegations that Defendants were notified of the Enforced Patents by Arteris—who provided infringing technology previously accused by NST to Defendants—are sufficient to plead pre-suit knowledge of the Enforced Patents and infringement of the same.

NST's allegations that RPX notified Defendants are likewise sufficient in and of themselves to plead Defendants' pre-suit knowledge of the Enforced Patents. Indeed, similar allegations that RPX members were notified of patents through RPX's regular updates have been found to provide "a plausible basis for alleging pre-suit knowledge of [the] patents-in-suit." *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. Jul. 26, 2012) ("The Court agrees with SoftView that the RPX Defendants' relationship with RPX, in light of

---

[3] That the non-party providing notice to the defendant in *iSource Loans* was a prior assignee of the patents—a point Defendants emphasize to distinguish that decision (Motion at 8)—makes no difference. If anything, the fact pattern here, where a trusted business partner of Defendants, Arteris, provided notice to Defendants (Arteris' customers) of NST's allegations of infringement, is an even stronger basis for plausible allegations of pre-suit knowledge.

8

RPX's business model, provides a plausible basis for reasonably inferring that the RPX Defendants became aware of both patents-in-suit"). Defendants do not deny being members of RPX or being notified of the Asserted Patents by RPX in their Motion. *See generally* Motion. Instead, Defendants fault NST for not referencing private communications between RPX and NST, (Motion at 8), but this argument seeks to deflect the focus from the notice that *RPX provided to Defendants*—specific facts that NST alleges with citations. Complaint ¶ 25. At bottom, NST's allegations regarding Arteris' and RPX's communications with Defendants are each independently sufficient to plausibly allege Defendants' pre-suit knowledge of the Enforced Patents and Defendants' infringement of the same, and Defendants' Motion should be denied on this basis.

Defendants' arguments and case citations regarding mere monitoring of patent suits are a straw man. Motion at 6. Unlike *Atlas Glob. Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, NST does not argue that Defendants had pre-suit knowledge merely because they "monitored the lawsuits against its competitors." 661 F. Supp. 3d 643, 651–52 (W.D. Tex. 2023). Nor is this situation like *Smith Interface Techs., LLC v. Apple Inc.*, where the plaintiff asserted knowledge because the accused system was merely "similar and a direct competitor to" a previously accused system. No. 23-cv-1187, 2024 WL 6916566, at *5 (S.D. Cal. Aug. 5, 2024). Rather, NST's allegations of Defendants' pre-suit knowledge are based on Defendants' license, use, and incorporation of Arteris interconnect technology—the *very same technology* accused of infringing the Enforced Patents in NST's 2022 Litigations. Complaint ¶¶ 24–25.[4] Moreover, NST's

---

[4] Defendants' citation to *InterMetro Indus. Corp. v. Capsa Sols., LLC*, is even further afield, involving only allegations of pre-suit knowledge based on prior litigation involving the ownership of the Asserted Patents and the general discussion of such prior litigation in newspaper articles. 50 F. Supp. 3d 657, 666 (M.D. Pa. 2014).

allegations are not based on mere monitoring of litigations; instead, they are based on communications to Defendants about NST's 2022 Litigations. *Id.*

Defendants also misconstrue NST's allegations as attempting to "imput[e] any alleged knowledge from RPX and Arteris to SK hynix." Motion at 7. But no imputation is necessary because, as explained above, NST's allegations are based on, *inter alia*, specific communications from Arteris and RPX to Defendants informing them of NST's 2022 Litigations, the Enforced Patents, and the very same infringing Arteris technology incorporated into their products. Complaint ¶¶ 24–25. NST did not allege *imputation* of Arteris' or RPX's knowledge to Defendants; NST alleged Arteris and RPX *imparted* knowledge directly onto Defendants.[5] *Id.*

NST also sufficiently pled Defendants' pre-suit knowledge of the '849 Patent, the only Asserted Patent that is not also an Enforced Patent. In addition to Defendants participating in the same tight-knit semiconductor industry as Philips, the fact that Defendants and Philips were "competitors in the same [NoC] industry is a fact that makes knowledge of the ['849 Patent] at issue more plausible, even if not sufficiently plausible by itself to pass muster under *Iqbal*." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-C-715, 2011 WL 3946581, at *4 n.5 (N.D. Ill. Sep. 2, 2011). And NST has alleged more. For example, the inventors of the '849 Patent are the same as the inventors of the '818, '449, '052, and '800 Patents (*compare* Complaint ¶ 71 *with* Complaint ¶¶ 26, 41, 56, 116), and the '849 Patent only differs by one additional inventor from the

---

[5] Defendants also suggest that NST's allegations are not plausible because "NST does not identify *any* specific alleged communication between Arteris and SK hynix—even after having obtained discovery from Arteris as part of the prior litigation between those parties." Motion at 7 (emphasis in original). This argument is a red herring. First, discovery seeking communications from Arteris to its customers informing them of NST's infringement allegations sent *after* NST's filed its 2022 lawsuit against Arteris was not relevant to any claim or defense at issue in NST's 2022 suit with Arteris. Second, if NST had received such discovery, the dissemination of such information would be subject to the protective order in place in that case and designation applied to such information by the producing party, precluding NST from using such discovery in this case.

'9893 Patent (*id.* ¶ 86). The '849 Patent also covers similar subject matter as the Enforced Patents, which all are directed to NoC technology. *Id.* ¶ 23. "[G]iven the similarities in content, inventorship, and ownership between the ['849 Patent and the Enforced Patents]," and NST's allegations regarding Defendants' knowledge of the Enforced Patents and their infringement of the same, NST's allegations of Defendants' pre-suit knowledge of the '849 Patent are sufficient. *See Suprema, Inc. v. Int'l Trade Comm'n*, 626 Fed. Appx. 273, 281 (Fed. Cir. 2015) (substantial evidence supported the ITC's finding that Suprema was willfully blind and induced infringement of a patent by pointing to, *inter alia*, the fact that the infringed patent had content, inventorship, and ownership in common with a patent that Suprema had studied); *see also Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 833–34 (E.D. Tex. 2019) (allegations of willful blindness to the asserted patents were sufficient to plead knowledge of the asserted patents).

### 2.    NST Sufficiently Pled Pre-Suit Knowing Inducement of the Infringing Acts

"The inducement knowledge requirement may be satisfied by a showing of actual knowledge or willful blindness." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015). NST has adequately alleged both actual knowledge and willful blindness by Defendants of their inducement of infringement of the Asserted Patents. Complaint ¶ 141.

Regarding Defendants' pre-suit actual knowledge of infringement, NST has already identified constellations of facts that plausibly allege Defendants' pre-suit knowledge of the Asserted Patents. *See supra* § IV.A.1. NST further identifies the following allegations that support Defendants' pre-suit knowing inducement of infringement by its customers: Defendants implemented the Arteris technology accused of infringing the Enforced Patents in NST's 2022 Litigations to create the Accused Products (Complaint ¶¶ 24–25); Defendants were notified of the Enforced Patents and NST's 2022 Litigations by both RPX and Arteris (*id.*); NST mapped

11

Defendants' use of this same Arteris technology to the claims of the Asserted Patents in the claim charts appended to its Complaint (*id.* ¶ 150; Dkt. 1-8; Dkt. 1-9; Dkt. 1-10; Dkt. 1-11; Dkt. 1-12; Dkt. 1-13; Dkt. 1-14); and Defendants "market, advertise, offer for sale, and/or otherwise promote the Accused Products" to induce infringement (Complaint ¶ 150; *see also id.* ¶ 150 nn.39–40 (identifying specific promotional materials for the Accused Products)).

Accordingly, NST's allegations are sufficient to plead Defendants' actual knowledge that it induced infringement before the filing of this suit. *See Potter Voice Technologies LLC v. Apple, Inc.*, Civil Action No. 12-cv-01096-REB-CBS, 2013 WL 1325040, at *3 (D. Colo. 2013) ("[T]he allegations in the complaint are sufficient to plead knowing inducement. The plaintiff alleges that the defendants knew of the plaintiff[']s patent, that other software used by the defendants infringes the patent, and that the defendants actively induce their customer to use the infringing software.") (emphasis added); *see also Billjco, LLC v. Apple Inc.*, 583 F. Supp. 3d 769 (W.D. Tex. 2022) (finding induced infringement adequately pled because, *inter alia*, defendant "has had knowledge of the Asserted Patents . . . and [the complaint] maps claim limitations to instructions in [defendants'] developer guides.").

In addition to adequately pleading actual knowledge, NST adequately pled Defendants' willful blindness to its pre-suit inducement of infringement. Defendants were willfully blind to, if not actually knowledgeable of, their inducement of infringement of the Asserted Patents by virtue of Defendants' pre-suit knowledge of the Asserted Patents, Defendants and Philips being direct competitors in the SoC and NoC industry, and Defendants' interest in the SoC and NoC research conducted by Philips which resulted in the subject matter of the Asserted Patents. *See Suprema*, 626 F. App'x at 280–81 ("The Commission found [defendant] liable for induced infringement based on the totality of the facts the Commission believed evidenced [defendants'] willful

12

blindness. . . . [G]iven the similarities in content, inventorship, and ownership between the [asserted patents], and the facts that [defendant] studied [one of the asserted patents] during its extensive market analysis, was aware of [plaintiff's] activities in the [technical field of the asserted patents], and specifically targeted the market [plaintiff] serviced when developing its own products, we find, based on the totality of the circumstances, that the Commission had adequate evidence upon which to conclude that [defendants'] actions constituted willful blindness").

Thus, NST has adequately alleged both actual knowledge and willful blindness by Defendants of their inducement of infringement of the Asserted Patents.

### 3. NST Sufficiently Pled Defendants Had Pre-Suit Specific Intent to Encourage Infringement of the Asserted Patents Prior to the Suit

"'Evidence of 'active steps . . . taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use" must be proffered to sufficiently plead specific intent. *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-CV-01331, 2023 WL 11833572, at *10 (W.D. Tex. July 21, 2023) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). This Court has previously clarified that while "general references to a purported infringer's website . . . are not enough," "specific statements or materials in support" are enough. *Id.* at *11 (citing *Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, Civil Action No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018)) (finding NST sufficiently plead specific intent based on NST's identification of an Arteris presentation and Arteris' website demonstrating the infringing technology).

NST's Complaint cites Defendants' specific statements and materials that evidence their encouragement of direct infringement by their customers. For example, NST identifies specific statements on Defendants' websites encouraging their customers to use the Accused Products in an infringing manner. *See* Complaint ¶ 141 (identifying Defendants' "Sales Kit" webpage that

13

provides customers with "news on upcoming SK hynix products and the latest materials on product strengths"); *id.* ¶ 150 n.39 (identifying webpage touting benefits of the Accused Products "Optimized for AI, with LLM Model Loading completed in one second," "Best performance to prepare for the launch of high-spec games"); *id.* ¶ 150 n.40 (identifying "Technical Resources" webpage). NST's Complaint also lists specific industry events in which Defendants showcased their Accused Products to customers and encouraged their customers to infringe, including at "GTC, SEMICON Korea, CES, and others." *Id.* ¶ 147.

Finally, Defendants' citation to *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, in support of their argument that these specific statements and materials are insufficient to allege specific intent, is inapposite. Motion at 13 (citing Civil Action No. 6-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015)). In *Core Wireless*, the Court found that plaintiff failed to provide adequate notice as to its induced infringement claims for "failing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner." 2015 WL 4910427, at *4. Conversely here, NST identified specific statements made by Defendants' touting the benefits of the Accused Products—i.e., increased speed and throughput—that are directly attributable to Defendants' infringement. *Compare id.* at *4 *with* Complaint ¶ 150 n.39 (identifying webpage touting benefits of the Accused Products: "Optimized for AI, with LLM Model Loading completed in one second," "Best performance to prepare for the launch of high-spec games").

Because NST has sufficiently pled all three elements of induced patent infringement, NST has plausibly alleged Defendants' pre-suit inducement of infringement of the Asserted Patents.

**B.    NST Sufficiently Pled Pre-Suit Contributory Infringement**

"[T]o state a claim for contributory infringement, a complaint must plead (1) knowledge of the patent, (2) knowledge of the acts alleged to be infringement, (3) that the accused infringer's

14

component is not suitable for a substantial non-infringing use; and (4) that the accused infringer's component is material to practicing the claimed invention." *BillJCo, LLC v. Apple, Inc.*, 583 F. Supp. 3d 769, 781–82 (W.D. Tex. 2022). As explained above, NST has plausibly alleged Defendants' pre-suit knowledge of the Asserted Patents and Defendants' pre-suit knowledge of their infringement of the Asserted Patents. *See supra* § IV.A.1–2.

Additionally, the Court has already determined that NST's similar allegations in a case involving the Enforced Patents were sufficient to plausibly allege that the accused components are not suitable for a substantial non-infringing use and that the accused components are material to practicing the claimed invention. *Network Sys. Techs., LLC v. Qualcomm Inc.*, Civil Action No. 1:22-CV-01331, 2023 WL 11833572, at *13 (W.D. Tex. July 21, 2023) ("unlike other cases where claims of contributory infringement were dismissed for lack of identification of the component, material, or apparatus contributing to the direct infringement of the patent, NST points to the precise instrumentalities at issue"); *see also* Complaint ¶ 137 (listing Accused Products). In that prior case, the Court found that although "NST's allegations of substantial non-infringing [use] are bare, they are enough to survive motion to dismiss scrutiny," noting that other courts in "this District found that a pleading that a defendant had 'knowledge that [plaintiff's] products are material parts . . . and are not staples of commerce with substantial non-infringing uses' sufficed to state a claim of contributory infringement." *Network Sys. Techs., LLC*, 2023 WL 11833572, at *13 (quoting *ACQIS Ltd. Liab. Co. v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 508 (W.D. Tex. 2022)). Accordingly, NST's allegations stating that "Defendants have contributorily infringed and continue to contributorily infringe the Asserted Patents by selling or offering to sell Accused Products, knowing them to be especially made or especially adapted for practicing the inventions

15

of the Asserted Patents and not a staple article or commodity of commerce suitable for substantial non-infringing use" are sufficient to state a claim of contributory infringement. Complaint ¶ 151.

As such, NST has sufficiently pled each element of pre-suit contributory infringement.

### C.    NST Sufficiently Pled Pre-Suit Willful Infringement

"To state a claim for willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). "The knowledge requirement for willful patent infringement is the same as for indirect patent infringement." *Network Sys. Techs., LLC*, 2023 WL 11833572, at *14 (citing *Atlas Global Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 727–28 (W.D. Tex. 2022)).

As detailed above, NST has plausibly alleged Defendants' pre-suit knowledge of the Asserted Patents and pre-suit indirect infringement of the Asserted Patents. *See supra* § IV.A–B. And Defendants have not disputed the sufficiency of NST's pre-suit direct infringement allegations. *See generally* Motion. Finally, NST has also plausibly alleged Defendants' pre-suit knowledge of their infringement of the Asserted Patents. *See supra* § IV.A.1–2. Therefore, NST has plausibly alleged all three elements of Defendants' pre-suit willful infringement of the Asserted Patents.

### D.    If Any Deficiency Is Found, NST's Allegations Should Be Dismissed Without Prejudice Pursuant to Section VII of the OGP

If the Court believes that any of NST's allegations of pre-suit indirect or willful infringement were insufficiently pled, NST respectfully requests such allegations be dismissed "without prejudice with leave to re-plead those allegations with specificity if supported by a good

faith basis under Rule 11 . . . within three months after fact discovery opens and" respectfully request that fact discovery is permitted "on indirect and willful infringement during those three months," in accordance with Section VII of the Court's OGP. *See, e.g.*, *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 729 (W.D. Tex. 2022) ("given that it may have been impossible for [plaintiff] to allege any pre-suit knowledge without the benefit of fact discovery, in accordance with the Court's usual practice, the Court permits [plaintiff] to amend its Complaint after the start of fact discovery to include pre-suit indirect and willful infringement claims, if it is able to elicit sufficient facts to support such allegations"); *BillJCo*, 583 F. Supp. 3d at 782 (permitting amendment after pre-suit knowledge discovery in accordance with OGP); *Textile Computer Sys., Inc. v. Broadway Nat'l Bank*, 620 F. Supp. 3d 557, 565 (W.D. Tex. 2022) (same); *see also N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (courts should "freely give leave when justice so requires").

Additionally, given that evidence in support of NST's allegations of pre-suit knowledge are likely to be found in emails (*e.g.*, communications from Arteris and/or RPX, and internal Defendant communications as well) and that evidence related to pre-suit knowledge was found in e-mail communications in the *Qualcomm* Case (*see Qualcomm* Case, Dkt. 183 ¶¶ 45–51), NST further requests that such fact discovery be specifically inclusive of fulsome email discovery. *See, e.g.*, *Qualcomm* Case, Dkt. 207 at 2 (discussing emails produced by Qualcomm in which Qualcomm's employees were assessing multiple of the Enforced Patents almost a decade prior to NST filing suit on those same patents).

## V.    CONCLUSION

For the foregoing reasons, NST respectfully requests that the Court deny Defendants' Motion in its entirety.

17

Date: March 9, 2026

Respectfully submitted,

*/s/ Daniel S. Stringfield w/ permission*
<u>William E. Davis, III</u>
William E. Davis, III (State Bar No. 24047416)
Ty Wilson (State Bar No. 24106583)
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
(903) 230-9090
bdavis@davisfirm.com
twilson@davisfirm.com

Daniel S. Stringfield
Timothy Maloney
Michael W. Gray
Matthew M. Zuziak
Peter C. Krusiewicz
Allison E. Strong
**NIXON PEABODY LLP**
70 West Madison St., Suite 5200
Chicago, IL 60602
(312) 977-4130
nst@nixonpeabody.com
dstringfield@nixonpeabody.com
tmaloney@nixonpeabody.com
mgray@nixonpeabody.com
mzuziak@nixonpeabody.com
pkrusiewicz@nixonpeabody.com
astrong@nixonpeabody.com

Alec M. Royka
**NIXON PEABODY LLP**
677 Broadway, 10th Floor
Albany, NY 12207
(518) 427-2650
aroyka@nixonpeabody.com

*Attorneys for Plaintiff Network
System Technologies, LLC*

18

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served via ECF on March 9, 2026, to all opposing counsel of record.

*/s/ William E. Davis, III*
William E. Davis, III