**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SK HYNIX INC.; SK HYNIX AMERICA INC., <br><br> *Defendant*. | Civil Action No. 1:25-cv-01647-ADA <br><br> Judge Alan D. Albright <br><br> **JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO
DISMISS PLAINTIFF'S PRE-SUIT INDIRECT AND WILLFUL
INFRINGEMENT ALLEGATIONS**

**TABLE OF CONTENTS**

**Page**

A.    NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the
Asserted Patents ................................................................................................ 1

    1.    NST's unsupported theory that Arteris or RPX notified SK hynix is
insufficient to establish pre-suit knowledge ............................................. 1

    2.    NST's remaining knowledge allegations are insufficient ...................................... 4

B.    NST Fails to Plausibly Allege Pre-Suit Indirect or Willful Infringement ......................... 5

    1.    NST does not plausibly allege that SK hynix knew that the induced acts
were infringing and had specific affirmative intent to infringe ............................. 6

    2.    NST's claims for pre-suit contributory infringement are boilerplate and
contain no factual support .................................................................................. 8

    3.    NST's claims for pre-suit willful infringement do not plausibly allege that
SK hynix deliberately infringed the asserted patents ............................................. 9

C.    The Court Should Reject NST's Request for E-Mail Discovery Regarding
SK hynix's Alleged Pre-Suit Knowledge of the Asserted Patents ................................... 9

D.    Conclusion ........................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aeritas, LLC v. Darden Corp.*,
No. 6:20-cv-938-ADA, 2021 WL 4868430 (W.D. Tex. Oct. 18, 2021)...................................2

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022).................................................................................6

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .............................................................................................5

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
562 F. Supp. 3d 376 (N.D. Cal. 2021) ................................................................................3

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6-cv-752-JRG, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .....................................7

*Flypsi, Inc. v. Google LLC*,
No. 6:22-cv-31-ADA, 2022 WL 3593053 (W.D. Tex. Aug. 22, 2022) .................................3

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012).............................................................................................6

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
No. 17-cv-143, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017)...........................................9

*iSource Loans, LLC v. SunTrust Mortg., Inc.*,
No. 2:13-CV-521, 2014 WL 3730289 (E.D. Va. Mar. 10, 2014)..........................................3

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
No. 6:20-cv-318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)...................................5

*Motiva Patents, LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)..................................................................................4

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
No. 1:22-cv-1331, 2023 WL 11833572 (W.D. Tex. July 21, 2023)............................... passim

*Network Sys. Techs., LLC v. Tex. Instruments Inc.*,
No. 2:22-cv-482, 2023 WL 2743568 (E.D. Tex. Mar. 31, 2023)..........................................5

*Potter Voice Techs. LLC v. Apple, Inc.*,
No. 12-cv-1096, 2013 WL 1325040 (D. Colo Mar. 29, 2013)..............................................7

*RFCyber Corp. v. Apple Inc.*,
6:21-CV-00916-ADA, 2022 WL 22891200 (W.D. Tex. Sept. 12, 2022) ..............................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*SoftView LLC v. Apple Inc.*,
 Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) .......................................... 4

*Suprema, Inc. v. ITC*,
 626 F. App'x 273 (Fed. Cir. 2015) ..................................................................................... 4, 8

*Textile Comput. Sys., Inc. v. Broadway Nat'l Bank*,
 620 F. Supp. 3d 557 (W.D. Tex. 2022)................................................................................. 9

*Westech Aerosol Corp. v. 3M Co.*,
 927 F.3d 1378 (Fed. Cir. 2019).......................................................................................... 8

## OTHER AUTHORITIES

OGP 4.4 – Patent Cases (Jan. 23, 2024) .................................................................... 10

NST's opposition simply parrots the deficient allegations in its Complaint, rather than explaining how those allegations pass muster under relevant precedents. NST's repeated insistence that its allegations must be considered "as a whole" and that SK hynix is wrong to "focus on discrete sub-portions of NST's allegations" merely highlights the scattershot approach to NST's pleading. *See, e.g.*, NST's Response in Opposition, Dkt. 43 ("Opp.") at 5. Lacking any clear basis to allege that SK hynix had pre-suit knowledge of the patents or infringement, NST cobbles together a number of theories for SK hynix's pre-suit knowledge, all of which are speculative and deficient. Contrary to its insistence, NST's multiple legally insufficient theories do not add up to create a sufficient basis to infer that SK hynix had the requisite pre-suit knowledge. Thus, even considered together, the sum total of NST's allegations remains fatally deficient. Because NST does not (and cannot) sufficiently plead that SK hynix had pre-suit knowledge of any of the asserted patents, let alone of any allegedly infringing acts, SK hynix's motion should be granted.

**A.      NST Fails to Plausibly Allege SK hynix's Pre-Suit Knowledge of the Asserted Patents**

NST never contends that it contacted SK hynix before filing its Complaint. Having admittedly failed to notify SK hynix of its alleged infringement before filing this lawsuit, NST's Complaint proffers scattershot theories about how SK hynix might have become aware of the asserted patents. In its Opposition, NST largely ignores SK hynix's arguments, instead asserting that SK hynix takes what NST believes is an improper "piecemeal approach." *See* Opp. at 6. But NST's theories, even if considered as a whole, do not give rise to a plausible inference that SK hynix knew of the asserted patents before NST filed its Complaint.

**1.      NST's unsupported theory that Arteris or RPX notified SK hynix is insufficient to establish pre-suit knowledge**

NST claims its allegations of pre-suit knowledge of the asserted patents are more robust than those previously dismissed in its initial complaint against Qualcomm, and "mirror the depth

and detail of the allegations" in NST's amended complaint in that *Qualcomm* case, which was not dismissed.  Opp. at 1, 6 (citing *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-cv-1331, 2023 WL 11833572 (W.D. Tex. July 21, 2023) ("*Qualcomm*")).  But NST fails to substantiate this claim by identifying any detailed allegations in its amended complaint in *Qualcomm* that are also found in its current complaint.  To the contrary, the allegations that NST emphasizes most to support its claims of pre-suit knowledge here—*i.e.*, that Arteris and RPX each purportedly notified SK hynix of NST's prior litigations—were ***not*** part of any of NST's complaints in the *Qualcomm* case.  At any rate, the allegations premised on Arteris and RPX are speculative and fail to plausibly support SK hynix's pre-suit knowledge under the precedents of this District and others.

As an initial matter, NST's allegations that Arteris and RPX notified SK hynix about the remaining asserted patents are entirely speculative, pled only "on information and belief," and the Court need not accept them as true.  *See Aeritas, LLC v. Darden Corp.*, No. 6:20-cv-938-ADA, 2021 WL 4868430, at *2–3 (W.D. Tex. Oct. 18, 2021) (the court need not accept as true unwarranted factual inferences).  These allegations lack sufficient factual support to be plausible. For example, although NST's opposition suggests that its Arteris-related allegations are "based on . . . specific communications from Arteris" to SK hynix, Opp. at 10, the Complaint identifies no such "specific communications."  NST's observation that Arteris's technology is also at issue in this case, *e.g.*, *id*. at  9–10, does not support NST's wild suppositions that Arteris would presumably have informed SK hynix and all its 100 other customers[1] about the potential litigation risk back in 2022—three years before NST actually filed this lawsuit against SK hynix.

Unable to identify any specific communication from Arteris to SK hynix, NST resorts to inapposite, out-of-District cases, *iSource* and *Core Optical*, to argue its threadbare allegations are

---

[1] Arteris has more than 100 customers of its NoC technology.  *See* https://www.arteris.com/press-releases/arteris-ip-100th-customer/.

sufficient.  *See* Opp. at 7–8.  As SK hynix explained in its motion, *iSource Loans* does not support NST's position—the court's decision there was based in part on the fact that the alleged third-party informant was the patent's original assignee, an allegation that NST cannot make here.  *iSource Loans, LLC v. SunTrust Mortg., Inc.*, No. 2:13-CV-521, 2014 WL 3730289, at *4 (E.D. Va. Mar. 10, 2014).  NST asserts in a footnote, again without support, that Arteris is SK hynix's "trusted business partner," and that this purported relationship "is an even stronger basis for plausible allegations of pre-suit knowledge" than those in *iSource Loans*.  Opp. at 8 n.3.  Notably, NST cites no legal authority for this assertion, because there is none; knowledge cannot be imputed from Arteris to SK hynix, entirely separate companies, without some justification for doing so.  *See, e.g.*, *Flypsi, Inc. v. Google LLC*, No. 6:22-cv-31-ADA, 2022 WL 3593053, at *14 (W.D. Tex. Aug. 22, 2022).  NST's citation to *Core Optical* fares no better.  There, the court found by only a "thin reed" that the defendant's relationship with a non-party plausibly supported the defendant's knowledge of the asserted patent because, among other things, that non-party had ***already admitted to disclosing*** the patent's existence to others, another allegation that NST does not make here.  *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376, 381 (N.D. Cal. 2021).

NST's RPX-related allegations are likewise speculative.  The sum total of NST's allegations are citations to two RPX "news article[s]" relating to NST's prior litigations, Compl. ¶ 25 nn.15, 17, and an RPX webpage summarizing NST's litigation history, *id.* ¶ 25 n.18.  NST provides no evidence that SK hynix had access to, actually accessed, or otherwise received these two specific news articles.  And these articles make only a brief, conclusory mention of the asserted patents and accused technology.  *See* Exs. 1–2 (copies of articles).

In support of its facially deficient allegations regarding RPX, NST cites only to *SoftView*. Opp. at 8–9.  But as SK hynix highlighted in its motion, the *SoftView* plaintiff did not solely rely

3

on the defendant's membership in RPX but also included undisputed factual allegations that: (1) RPX had actually entered into negotiations with the defendant regarding the asserted patents and (2) RPX subsequently specifically notified the defendant of those patents. *SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *6–7 (D. Del. July 26, 2012). NST does not even attempt to make any such allegations here. Instead, its RPX-related allegations amount to very little: the unsupported assumption that SK hynix accessed two specific news articles, out of the hundreds of articles RPX publishes every week. That is not enough.

Finally, for the '849 Patent, NST acknowledges that the '849 patent was not at issue in its prior litigations and, thus, NST cannot allege that SK hynix previously learned of that patent from Arteris or RPX. Instead, the only basis NST offers for pre-suit knowledge is its generalized "fame" theory, which is insufficient for the reasons discussed below. *See* Opp. at 10.[2]

### 2.    NST's remaining knowledge allegations are insufficient

Beyond its unsupported allegations of pre-suit communications from Arteris and RPX, NST makes generalized statements allegedly supporting SK hynix's pre-suit knowledge of the asserted patents via the "fame" of the original assignee, Philips, and the fact that a handful of unrelated nonparties cited some of the asserted patents during prosecution of their own patents.

NST's "fame" allegations are plainly insufficient. Indeed, generalized allegations that patents were "well known" in an industry have been held insufficient to state a claim by multiple

---

[2] NST's citation to *Suprema, Inc. v. ITC*, 626 F. App'x 273, 281 (Fed. Cir. 2015), in support of its '849 patent-specific knowledge argument is irrelevant. There, the Federal Circuit considered, after the conclusion of a full evidentiary hearing and final determination, whether there was substantial evidence to support the Commission's findings regarding induced infringement. *Suprema* has nothing at all to do with the sufficiency of pleadings. NST's citation to *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 833–34 (E.D. Tex. 2019), is similarly misplaced, as that decision found the plaintiff had sufficiently pled pre-suit knowledge because of the specificity of its willful blindness allegations, including that the defendant had "a policy prohibiting review of patents." *Id.* at 834. NST has made no such allegations here.

courts.  *See Qualcomm*, 2023 WL 11833572, at *6–7 (allegations of patent fame, industry awareness, and alleged monitoring of Philips' patent portfolio did not plausibly show pre-suit knowledge of asserted patents); *Network Sys. Techs., LLC v. Tex. Instruments Inc.*, No. 2:22-cv-482, 2023 WL 2743568, at *5–9 (E.D. Tex. Mar. 31, 2023) (same).  And NST does not allege **SK hynix** has ever cited any of NST's asserted patents during prosecution of its own patents.

Tellingly, NST does not even respond to these arguments in its opposition, instead speculating that SK hynix monitored Arteris's litigation.  Opp. at 9–10.  But conclusory allegations of litigation monitoring are insufficient to transform allegations of pre-suit knowledge from speculative to plausible.  *See, e.g.*, *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, No. 6:20-cv-318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021).  Indeed, NST appears to concede its litigation monitoring allegations are insufficient, asserting its "allegations are not based on mere monitoring of litigations" but are instead "based on communications to [SK Hynix] about NST's" prior litigations.  Opp. at 9–10.  But, as discussed, NST provides no basis to support that such "communications" between Arteris and SK hynix (one of Arteris's hundreds of customers) ever occurred.

In sum, even adding all of NST's allegations together still results in an insufficient pleading of NST's pre-suit knowledge of the asserted patents.  *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) (rejecting the "kitchen sink" approach to pleading and emphasizing that it is the quality of the allegations, rather than the quantity, that matters).

### B.    NST Fails to Plausibly Allege Pre-Suit Indirect or Willful Infringement

Claims of indirect and willful infringement claims require showing that the defendant knew of its infringement.  *See RFCyber Corp. v. Apple Inc.*, 6:21-CV-00916-ADA, 2022 WL 22891200, at *2 (W.D. Tex. Sept. 12, 2022) ("Like a willful infringement claim, indirect infringement claims require a showing that the accused infringer knew of its infringement.").  NST's opposition

5

confirms that the complaint fails to plausibly allege that SK hynix knowingly infringed the asserted patents before this case was filed.

### 1.     NST does not plausibly allege that SK hynix knew that the induced acts were infringing and had specific affirmative intent to infringe

"[I]ndirect infringement claims require a showing that the accused infringer knew of its infringement." *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777–78 (W.D. Tex. 2022) (internal citation omitted). Here, it is undisputed that NST never communicated with SK hynix before bringing this lawsuit. NST's speculation that Arteris or RPX informed SK hynix about NST's prior litigations is speculative and implausible, as discussed above. *See supra* Section A. And even if SK hynix had been informed of NST's prior litigations, it still would not support pre-suit knowledge of *infringement* because the prior litigations concerned different products of other companies, Qualcomm and Arteris—SK hynix's products were never at issue in the prior cases.

NST also does not identify any active steps taken by SK hynix to encourage others' direct infringement. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). NST acknowledges that "general references to a purported infringer's website . . . are not enough," and that "specific statements" encouraging "an infringing use" are required. Opp. at 13. NST nonetheless attempts to defend its allegations of induced infringement that point exclusively to general references on SK hynix's website. *Id*. at 13–14. For example, NST makes no effort to explain how its citation to SK hynix's "Sales Kit" webpage—with news on *upcoming* SK hynix products—purportedly demonstrates SK hynix promoting use of the *accused products* in an infringing manner. *See* Mot. at 13. Similarly, NST's claim chart citations to an unrelated textbook do not show a hint of intent to infringe. *See id*. at 13–14. Thus, far from alleging any statement by SK hynix inducing a third party to perform any asserted patent claim (or portion of a claim), NST's cited sources do not even relate to any actual accused SK hynix product.

The cases NST cites in support of its inducement allegations are unpersuasive.  For example, NST's reliance on *Potter Voice Technologies LLC v. Apple, Inc.*, No. 12-cv-1096, 2013 WL 1325040, at *3 (D. Colo Mar. 29, 2013), in defending its allegations of inducement is inapposite.  In *Potter*, the court analyzed whether knowledge first gained when a lawsuit is filed is sufficient to support a claim of ***post***-suit induced infringement.  *Id*. at *2.  That issue is not present here, where SK hynix is seeking to dismiss NST's claims for ***pre***-suit willful and indirect infringement.

NST also fails to distinguish its facially insufficient allegations from the nonspecific allegations dismissed in *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6-cv-752-JRG, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015).  Opp. at 14.  NST's conclusory allegations, pointing to general, nonspecific statements on SK hynix's website and excerpts from an unrelated textbook, are insufficient to make its allegations of pre-suit indirect infringement plausible, just like the allegations deemed insufficient in *Core Wireless*.  It was for these reasons that Judge Ezra dismissed ***identical*** allegations in *Qualcomm*.  2023 WL 11833572, at *11–12 & n.9 (explaining allegations of specific intent could not be plausibly inferred from screenshots of product specifications from Qualcomm's website).  In sum, NST's Complaint fails to plausibly allege that SK hynix had the requisite intent to encourage others to directly infringe before this action.

NST's assertion that it adequately pled willful blindness also fails.  NST's allegations do not address any policies or actions by SK hynix suggesting it took deliberate actions to avoid learning about NST's prior litigations.  Mot. at 14–15.  NST instead only refers to its conclusory allegations regarding SK hynix's purported pre-suit knowledge, which are insufficient for the reasons discussed above.  Opp. at 12–13 (asserting SK hynix was willfully blind to its allegedly induced infringement "by virtue of [its] pre-suit knowledge of the Asserted Patents" and

7

SK hynix's alleged "interest" in Philips).  NST's repeated citation to *Suprema* in support of these allegations is again inapt.  There, the Federal Circuit affirmed a willful blindness finding based on evidence that the defendant closely studied at least one asserted patent and analyzed the patentee's products and market.  *Suprema*, 626 F. App'x at 281.  NST does not allege any such facts here.

Accordingly, NST's complaint does not plausibly allege that SK hynix had the requisite knowledge or specific intent to support NST's allegations of pre-suit induced infringement.

### 2.    NST's claims for pre-suit contributory infringement are boilerplate and contain no factual support

NST's contributory infringement allegations include only conclusory allegations or legal conclusions masquerading as factual conclusions, and should therefore be disregarded as conclusory.  *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).  NST does not meaningfully dispute this point.  Opp. at 15 (arguing that, *e.g.*, paragraph 159, which simply repeats the legal standard for contributory infringement, adequately states a claim).

Instead, NST mischaracterizes Judge Ezra's decision on a motion to dismiss in *Qualcomm*, asserting that Judge Ezra found similar allegations sufficient to support a contributory infringement claim.  Opp. at 15.  What NST fails to mention is that while Judge Ezra determined that NST's allegations sufficiently alleged certain elements of contributory infringement, Judge Ezra ultimately ***dismissed*** its boilerplate allegations.  *See Qualcomm*, 2023 WL 11833572, at *13 ("Without more detail, the Court cannot find that this assertion sufficiently states a claim of pre-suit contributory infringement.").  Here, NST's complaint includes allegations ***identical*** to those Judge Ezra dismissed.  *Compare, e.g.*, Compl. ¶ 159 (alleging SK hynix contributorily infringed "by offering to sell, selling, and/or importing the Accused Products, knowing them to be especially made or especially adapted for practicing the inventions of the [asserted] patent and not a staple article or commodity of commerce suitable for substantial non-infringing use"), *with Qualcomm*,

8

No. 1:22-cv-01331, Dkt. 1, ¶ 177 (Dec. 19, 2022) (same).    These "factually threadbare" contributory infringement allegations should be dismissed. *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 17-cv-143, 2017 WL 9477677, at *7 (W.D. Tex. Nov. 28, 2017).

### 3.    NST's claims for pre-suit willful infringement do not plausibly allege that SK hynix deliberately infringed the asserted patents

"To show pre-suit willful infringement, the Court will typically require that the defendant receives a notice letter identifying the asserted patents, identifying the accused products, and suggesting that the accused products are either relevant to or infringe the asserted patents." *Textile Comput. Sys., Inc. v. Broadway Nat'l Bank*, 620 F. Supp. 3d 557, 567 (W.D. Tex. 2022).    To support its claims of pre-suit knowledge for willful infringement, NST simply re-urges its theory that RPX and Arteris notified SK hynix of NST's prior litigations.    Opp. at 6–7.    As described above, these allegations are purely speculative. *Supra*, Section A.    But even if this speculation proved true, it still would not address SK hynix's alleged pre-suit knowledge of *infringement*, because no SK hynix products were implicated in those litigations that concerned different, unrelated products of Qualcomm and Arteris. *See generally Qualcomm*, No. 1:22-cv-1331, Dkt. 1; *Textile Comput.*, 620 F. Supp. 3d at 567 (requiring the plaintiff "identify[] the accused products").    Accordingly, NST has not plausibly alleged pre-suit willful infringement.

### C.    The Court Should Reject NST's Request for E-Mail Discovery Regarding SK hynix's Alleged Pre-Suit Knowledge of the Asserted Patents

NST requests leave to re-plead its allegations of pre-suit willful and indirect infringement within three months after fact discovery opens if the Court grants SK hynix's motion.    Opp. at 16–17.    SK hynix acknowledges that the Court's OGP permits a plaintiff to re-plead allegations of pre-suit willful and indirect infringement, within 90 days after the start of fact discovery, if it discovers facts to support such allegations, and on that basis SK hynix does not oppose this request.

SK hynix does, however, oppose NST's request for an order authorizing email discovery

concerning SK hynix's pre-suit knowledge of the asserted patents.  NST's request for email discovery is procedurally and substantively defective.  Procedurally, the Court's OGP provides a special procedure for requesting leave for email discovery and requires a "showing of good cause." *See* OGP 4.4 – Patent Cases §§ III, IV (Jan. 23, 2024).  NST has not complied with that procedure.

Substantively, NST has not established "good cause" for the requested email discovery. NST states that email discovery against Qualcomm in a prior case revealed email communications from 2013–14 in which venture fund Governing Dynamics, LLC attempted to sell a portfolio of patents, including the asserted patents, to Qualcomm. Opp. at 4–5. This fact regarding **Qualcomm**, however, does not demonstrate good cause to impose the burdens of email discovery on **SK hynix**.[3] Indeed, NST does not allege General Dynamics reached out to SK hynix regarding a potential sale of the asserted patents.  NST also suggests SK hynix may have received communications from Arteris and/or RPX regarding the asserted patents or NST's prior litigation campaign.  Opp. at 6–7.  As discussed above, however, NST's allegations regarding such communications are entirely speculative. In any event, NST can rely upon ordinary discovery mechanisms (*e.g.*, interrogatories) to pursue such information at the appropriate time.  There is no good cause at this time, based on the present record, to impose the burdens of email discovery upon SK hynix.

### D.    Conclusion

NST's opposition cannot repair its facially deficient complaint, which lacks the specific allegations required to sufficiently plead SK hynix's pre-suit knowledge of the asserted patents and intent to infringe.  The Court should thus dismiss NST's pre-suit indirect and willful infringement claims.

---

[3] NST is also incorrect in its assertion that General Dynamics' outreach to Qualcomm was revealed through email discovery of Qualcomm, as the record from the case shows that the emails were "independently obtained by NST."  *See Qualcomm*, No. 1:22-cv-1331, Dkt. 207 .

Dated:  March 16, 2026

Respectfully submitted,


/s/ *Timothy S. Durst*

Timothy S. Durst (Tex. Bar #00786924)
Jeff Baxter (Tex. Bar #24006816)
Frances Mackay (*pro hac vice*)
Tex. Bar #24109494
tdurst@omm.com
jbaxter@omm.com
fmackay@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone: (972) 360-1900

Ryan Yagura (Tex. Bar #24075933)
Brian Cook (*pro hac vice*)
ryagura@omm.com
bcook@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

Mark Liang (*pro hac vice*)
Eric Ong (*pro hac vice*)
mliang@omm.com
eong@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Brooke M. Wilner (*pro hac vice*)
Jacob Boesch (*pro hac vice*)
brookewilner@omm.com
jboesch@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, DC 20006
Telephone: (202) 383-5300

11

Matthew A. Gerges (*pro hac vice*)
mgerges@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 823-6900

Darryl J. Adams
dadams@sgbfirm.com
**SLAYDEN GRUBERT BEARD**
401 Congress Avenue, Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550

*Counsel for SK hynix Inc. and SK hynix America Inc.*

12

**<u>CERTIFICATE OF SERVICE</u>**

Service of this document was effected by the Western District of Texas' ECF system as of the date of filing, March 16, 2026.  All counsel of record have consented to such service.

*/s/ Timothy S. Durst*
Timothy S. Durst

13